IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHU de Québec – Université de Laval<br><br>Plaintiff,<br><br>v.<br><br>DreamScape Development Group Holdings, Inc. dba DreamScape Development Group, Inc. and Darrell Fritz dba DreamScape Development Group, Inc.,<br><br>Defendants. | Civil Action No. 21-cv-00182<br><br>JURY DEMANDED |

## COMPLAINT

Plaintiff CHU de Québec – Université de Laval ("**CHU**") brings this action against Defendants DreamScape Development Group Holdings, Inc. ("**DreamScape**") and Darrell Fritz ("**Fritz**"), and states as follows:

## PARTIES AND RELATED PARTIES

1. CHU is the largest university hospital network in the Canadian province of Québec, with five hospitals serving the population of eastern Québec and northeastern New Brunswick, a pool of nearly 2 million people. CHU is a non-profit organization created under the Act respecting Health Services and Social Services of the province of Québec. CHU employs approximately 12,500 people, including more than 1,500 doctors, dentists, pharmacists, and other health care workers. CHU is a citizen of Quebec, Canada, with its principal place of business at 11 Côte du Palais Québec, QC, G1R 2J6 Canada.

1

2. Upon information and belief, Defendant DreamScape is a corporation organized under the laws of the State of Delaware and with its principal office and principal place of business located at 7009 Tilbury Ct., McKinney, Texas 75071.

3. Upon information and belief, Defendant DreamScape conducts business in Texas under the assumed name "DreamScape Development Group, Inc." (which is similar to DreamScape's legal name but without inclusion of the word "Holdings").  However, and also upon information and belief, Defendant DreamScape has not registered this assumed name by filing a certificate with the Texas Secretary of State.

4. Upon information and belief, Defendant Fritz is a director, president, and chief executive officer of DreamScape, and resides at 7009 Tilbury Ct., McKinney, Texas 75071.

5. Upon information and belief, Defendant Fritz, like Defendant DreamScape, also conducts business in Texas under the assumed name of "DreamScape Development Group, Inc."  Also upon information and belief, Defendant Fritz did not register this assumed name by filing a certificate with the Texas Secretary of State.  Finally, and also upon information and belief, Defendant Fritz operates Defendant DreamScape as an alter ego of himself.

6. Non-party The Centre d'Acquisitions Gouvernementales (formerly known as SigmaSanté and hereinafter designated as the "**CAG**") is a non-profit organization representing health establishments in the Québec regions of Montreal and Laval. During the COVID-19 pandemic, the Ministry of Health and Social Services in the province of Québec ("**Ministry of Health**") empowered CAG to manage the procurement and supply of goods and services to health and social services establishments in Québec.

7. As will be set out in greater detail below, CAG oversaw the sourcing of personal protective equipment, such as gloves, gowns, masks, and respirators ("**PPE**") for CHU with occasional direct input from representatives of the Ministry of Health. CAG was acting as CHU's agent in procuring PPE.

8. Non-party R Negotiations LLC ("**R Negotiations**") is a limited liability company organized under the laws of the state of New York, with offices located at 815 Rt. 82, suite 100, Hopewell Junction, NY 10005-4129.

9. Non-party Gregory Kuczinski ("**Kuczinski**") is an attorney and a member of the New York State Bar (Registration Number 2647337) with a business address located at 301 Old Tarrytown Rd, White Plains, NY 10603-2825.

## JURISDICTION & VENUE

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 and because the action is between citizens of a U.S. State and a citizen of a foreign state. Specifically, Defendant Fritz is a citizen of Texas and Defendant DreamScape is a citizen of Delaware and Texas, whereas Plaintiff CHU is a citizen of Québec, a province within the foreign state of Canada.

11. Venue is proper in this judicial district under 28 U.S.C.§ 1391(a), because this is a district in which at least one Defendant resides. Venue is also proper in this district under 28 U.S.C. § 1391(b), because this is a district in which a substantial part of the events giving rise to occurred and where a substantial part of the property at issue is located.

## FACTUAL ALLEGATIONS

12. By early March 2020, instances of the disease caused by SARS-CoV-2 ("**COVID-19**") had started to spread across North America, including in Québec. Given

the experience in Europe and other COVID-19 hotspots, and the interruptions to global supply chains cause by this pandemic, the province of Québec began to prepare for a strain on its stockpile of PPE.

13. On or about March 9, 2020, the Ministry of Health tasked CHU with the responsibility of overseeing the supply and distribution of PPE to healthcare establishments across Québec. Working with CAG, CHU looked to both traditional and non-traditional suppliers of PPE in order to overcome worldwide shortages.

14. A critical piece of PPE used by medical professionals in the hospital setting is the N-95 respirator, which is a disposable facemask with an added particulate respirator that captures most airborne particles ("**N-95 Masks**").  N-95 Masks that meet certain safety standards and minimum filtration requirements are certified for use in medical settings by the National Institute for Occupational Health and Safety ("**NIOSH**") and the Food and Drug Administration ("**FDA**") in the United States, and by Health Canada (which accepts and relies upon NIOSH certification).  One of the most well-known manufacturers of N-95 Masks is the company 3M, which produces different models of NIOSH certified N-95 Masks such as the 3M 1860 N-95 Health Care Particulate Respirator and Surgical Mask ("**3M N-95 1860 Mask**").

15. On or about April 6, 2020, Brian Podolak ("**Podolak**"), a representative of R Negotiations, advised CAG that R Negotiations was in a position to assist CAG in procuring a considerable amount of 3M NIOSH certified N-95 Masks.  Podolak provided CAG with information regarding available quantities, the type of 3M NIOSH certified N-95 Mask available (namely the 3M N-95 1860 Mask**)**, pricing, and delivery. Podolak

advised CAG that, to procure the Masks, the funds for the purchase would need to be placed into escrow with R Negotiations's attorney, Kuczinski.

16. On April 9, 2020, Podolak sent an email to CAG, copying Kuczinski, that outlined the agreement for R Negotiations to assist CHU in the purchase of 3M N-95 1860 Masks:

> Elie
>
> i have cc'd Greg, the USA attorney who will represent us on this deal.
>
> He is speaking to the sellers attorney, and coordinating next steps.
>
> To be clear, and we have to move fast, so you can pick them up by afternoon.
>
> 1. We must have the PO. Greg will send you who to make that out to.
>
> 2. Monies must be in escrow for the inspection by SGS. We cannot get access until it is 100% in escrow. **Just tell Greg in this email you will do the escrow in the AM, and I will try and start SGS tonight! We have a good relationship with the seller.** Just send Greg the confirmation and we can begin.
>
> 3. SGS will handle inspection. You will also be free to send any people you know to check the product.
>
> 4. Upon Inspection being up to your standards. and you are ready to load your trucks / plane, we then release the payment to the seller.
>
> 4.1 If you are not happy for any reason, escrow goes back to you.
>
> 5. SGS Inspection will take about 2 hours, so you we expect a 1pm ET pickup time
>
> 6. After this, I have up to 20 million more for you!
>
> SIMPLE, FAST, SAFE
>
> Brian
>
> 561-271-8275

17. In response, on April 10, 2020, CAG instructed CHU to issue purchase orders for 3 million 3M N-95 1860 Masks in the amount of $18 million and to complete a wire transfer in the same amount to the escrow IOLA account of Kuczinski.

18. On the same day, CHU issued three purchase orders bearing purchase order numbers 3804906, 3804907 and 3804908, and totalling $18 million to R Negotiations (the "**Purchase Orders**"):

   a. Purchase order 3804906 for 1 million 3M N-95 1860 Masks, totalling $6 million;

   b. Purchase order 3804907 for 1 million 3M N-95 1860 Masks, totalling $6 million; and

   c. Purchase order 3804908 for 1 million 3M N-95 1860 Masks, totalling $6 million.

19. CHU completed a wire transfer totalling $18 million (the "**Funds**"), which is the total of the Purchase Orders, in escrow to the IOLA account of Kuczinski, thus fulfilling its obligations outlined in Podolak's email and the Purchase Orders.

20. When the Masks were not delivered, CHU cancelled the Purchase Orders and sought the return of the Funds. R Negotiations and Kuczinski returned approximately $12.5 million of the Funds, but continued to try to source 3M N-95 1860 Masks for CHU. As a result of these sourcing efforts, R Negotiations and Kuczinski came into contact with defendants Fritz and DreamScape.

21. DreamScape, through Fritz, represented it was in contact with an authorized 3M vendor and would be able to provide the 3M N-95 1860 Masks.

22. Upon information and belief, the documents provided by DreamScape and Fritz to support the assertion that they were in contact with an authorized 3M vendor included doctored images of 3M orders. In particular, and also upon information and belief, these images contained unauthorized copies of 3M orders for an entirely different

3M customer and which were not (and could not have been) made by DreamScape or by Fritz.

23.     Due to the urgent need for these masks, on April 16, 2020, R Negotiations and Kuczinski, acting as CHU's agents, entered into an agreement with Fritz and DreamScape (the "**April 16 Letter Agreement**")(attached hereto as **Exhibit A** is a true and correct copy of the April 16 Letter Agreement) whereby Defendants agreed to provide CHU, through R Negotiations, with 3 million 3M N-95 1860 Masks for a purchase price of $5.25 million to be wired to Defendants' escrow account under the assumed name DreamScape Development Group, Inc.  Fritz signed the April 16 Letter Agreement for "DreamScape Development Group, Inc.," which, as explained above, is the unregistered assumed name for both Defendants.

24.     To ensure that the $5.25 million wired to Defendants would be returned if Defendants failed to provide the 3 million 3M N-95 1860 Masks very promptly, the April 16 Letter Agreement stipulated that Defendants would return all funds if the Masks were not produced within two weeks:

> The above reference escrow was transferred to your Escrow account with Morgan Stanley on April 15, 2020, from my Attorney Escrow Account as Escrow Agent. This transfer represented the requisite deposit for the production of 3,000,000.00 3M N-95 masks, model 1860, on behalf of the end buyer. As discussed with you, our client the end buyer in this transaction, is not only in dire need of these masks, but due to previous unsuccessful attempts to obtain the same, has placed a time limit on the production of these masks. **Accordingly, if you are unable to produce the entire or at least a partial order of the masks within two weeks of today, then the client requests the full return of the above referenced escrow. You have agreed to these conditions**. Accordingly, I have entered into an escrow agreement with the end buyer outlining this (*sic*) these conditions. (Emphasis added.)

7

25. Defendants, by Fritz, executed the April 16 Letter Agreement.

26. On April 15, 2020, and pursuant to the April 16 Letter Agreement, Kuczinski wired $5.25 million from his escrow account to Defendants' escrow account. These funds were being held by Kuczinski in escrow for the benefit of CHU and for the purchase of 3M N-95 1860 Masks.

27. DreamScape and Fritz have failed to meet the April 16 Letter Agreement's deadline, and have failed to provide any Masks pursuant to the April 16 Letter Agreement.

28. Therefore, on May 8, 2020, CAG informed R Negotiations and Kuczinski that this second agreement was cancelled and demanded the immediate reimbursement of the $5.25 million provided to DreamScape and Fritz.

29. On May 8, 2020, Kuczinski demanded that DreamScape and Fritz immediately return the $5.25 million that was transferred by Kuczinski on April 15, 2020. Kuczinski stated that "the client" (CAG) was demanding the return of all funds pursuant to the escrow agreement, including interest.

30. DreamScape and Fritz have failed or refused to make such payment.

31. Despite numerous repeated further demands, DreamScape and Fritz have failed and refused to return any of the $5.25 million that they hold in escrow pursuant to the April 16 Letter Agreement.

**DEFENDANTS' WRONGFUL CONDUCT**

32. In exchange for $5.25 million, DreamScape and Fritz agreed to provide 3 million N-95 1860 Masks by no later than two weeks from April 16, 2020.

33. DreamScape and Fritz claimed to be in contact with an authorized 3M vendor to procure the Masks.

34. DreamScape and Fritz produced doctored images of 3M orders unrelated to the April 16 Letter Agreement in support of the assertion that they could provide the Masks.

35. DreamScape and Fritz failed to provide the 3M N-95 1860 Masks and did not return the $5.25 million they received pursuant to the April 16 Letter Agreement, despite numerous demands and specific instructions that the Funds be returned immediately.

36. In light of the above, CHU is entitled to claim damages from DreamScape and Fritz in an amount no less than $5.25 million plus interest.

## COUNT I

### BREACH OF CONTRACT BY NON-DELIVERY OF GOODS
(Tex. Bus. & Comm. Code Title I, Chapter 2)
(Against DreamScape and Fritz)

37. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 36 as though fully set forth herein.

38. The April 16 Letter Agreement is a valid and enforceable contract under which Fritz, on behalf of himself and DreamScape, agreed to deliver the Masks within the specified time frame in exchange for the $5.25 million placed in escrow, or to return the $5.25 million in the event it could not deliver the Masks within the specified time frame.

39. Plaintiff fully performed under the April 16 Letter Agreement when Kuczinski, acting as Plaintiff's agent, transferred the $5.25 million from his IOLA account to Defendants' escrow account.

40. Defendants breached the April 16 Letter Agreement by failing to provide any Masks within the specified time period and by not returning the $5.25 million.

41. Despite repeated further demands, Defendants have failed to return the funds.

42. Plaintiff has suffered actual damages equal to the value of the undelivered Masks, adjusted for any change in market value as of the time Plaintiff discovered Defendants' breach in an amount to be proven at trial, but in no event less than $5.25 million, plus interest.

43. Plaintiff suffered incidental and consequential damages, including lost profits and any reasonable costs expended in attempting to take delivery of the Masks and/or in obtaining substitute goods in an amount to be proven at trial.

44. Plaintiff is also entitled to recover attorneys' fees as permitted under Texas Civil Practice and Remedies Code Chapter 38.

## COUNT II

## FRAUD
### (Against DreamScape and Fritz)

45. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 36 as though fully set forth herein.

46. Defendants, specifically Fritz acting on his own behalf and on behalf of DreamScape, represented to Plaintiff and its agents, including R Negotiations and Kuczinski, that they were in contact with an authorized 3M vendor and would procure and deliver actual 3M Masks.

47. Defendants, again Fritz acting on his own behalf and on behalf of DreamScape, provided doctored images of 3M documents to Plaintiff and its agents, including R Negotiations and Kuczinski, in furtherance of the representation that they were in contact with an authorized 3M vendor.

48. Defendants knew or should have known their representations were false.

49. Defendants made these representations with the intention that R Negotiations and Kuczinski agree to transfer Plaintiff's funds to Defendants and to permit Defendants to proceed with procuring the Masks.

50. Defendants' misrepresentations fraudulently induced R Negotiations and Kuczinksi, acting on behalf of Plaintiff, to enter into the April 16 Letter Agreement.

51. Plaintiff and its agents relied on Defendants' representation that they were in contact with an authorized 3M vendor and would be able to supply actual 3M Masks when entering into the April 16 Letter Agreement and authorized the $5.25 million in funds to be transferred to Defendants' escrow account. Plaintiff would not have entered into the April 16 Letter Agreement but for Defendants' misrepresentations that it was an authorized 3M vendor and could promptly deliver the Masks.

52. As a result of Plaintiff's reliance on Defendants' misrepresentations, Plaintiff has suffered actual damages equal to the value of the undelivered Masks, adjusted for any change in market value as of the time Plaintiff discovered Defendants' misconduct in an amount to be proven at trial, but in no event less than $5.25 million, plus interest.

53. Plaintiff suffered incidental and consequential damages, including lost profits and any reasonable costs expended in attempting to take delivery of the Masks and/or in obtaining substitute goods in an amount to be proven at trial.

54. Plaintiff is entitled to exemplary damages because Defendants' misrepresentations were made with malice.

## COUNT III

**UNJUST ENRICHMENT**
**(Against DreamScape and Fritz)**

55. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 36 as though fully set forth herein.

56. Defendants have benefited from the receipt of $5.25 million to the detriment of Plaintiff.

57. Defendants in good conscience should not be allowed to retain the $5.25 million transferred by R Negotiations and Kuczinksi, on behalf of Plaintiff.

58. As a result of Plaintiff's reliance on Defendants' misrepresentations, Plaintiff has suffered actual damages equal to the value of the undelivered Masks, adjusted for any change in market value as of the time Plaintiff discovered DreamScape's misconduct in an amount to be proven at trial, but in no event less than $5.25 million, plus interest.

59. Plaintiff suffered incidental and consequential damages, including lost profits and any reasonable costs expended in attempting to take delivery of the Masks and/or in obtaining substitute goods in an amount to be proven at trial.

## COUNT IV

### ALTER EGO
### (Against DreamScape and Fritz)

60. Plaintiff repeats and re-alleges each of the allegations in paragraphs 1 through 36 as though fully set forth herein.

61. The corporate entity of Defendant DreamScape should be disregarded in this case because DreamScape is an alter ego of Defendant Fritz. A corporate entity may be disregarded, and its owners held responsible for the corporation's liabilities, where there

exists such unity between the individual and the corporation that the corporation ceases to be separate and when holding only the corporation liable would promote injustice.

62. Unity exists between Defendant DreamScape and Defendant Fritz such that DreamScape has ceased to have a separate existence. Defendant Fritz is the director, chief executive officer, and president of DreamScape. Upon information and belief, Defendant Fritz and Defendant DreamScape both conduct business in Texas under the same assumed name: "DreamScape Development Group, Inc."

63. Upon information and belief, and as of the date of this filing, neither Defendant has submitted a registration certificate for their assumed name to the Texas Secretary of State, and thus Defendants' continued business operations are in violation of Chapter 71 of the Texas Business and Commerce Code, which requires businesses operating in Texas under an assumed name to register the assumed name by filing an appropriate certificate.

64. To the extent only Defendant DreamScape, and not Defendant Fritz, is held liable for any portion of the damages due to Plaintiff in this action, such apportionment of liability would be unjust, because Fritz's operation of Dreamscape as an alter-ego of himself was conducted in a fraudulent and misleading manner. Upon information and belief, Fritz's use of the assumed name "DreamScape Development Group, Inc." for business he conducts in Texas as an unincorporated individual person is misleading, because it demonstrates to customers, potential customers, vendors, and others that they are communicating and/or transacting business with an incorporated business entity, when in fact they are communicating or transacting business with Fritz individually. In addition

to entering into the agreement at issue in this case under the unregistered and misleading assumed name of DreamScape Development Group, Inc.,

65. Furthermore, Defendant Fritz's operation of Dreamscape as an alter-ego of himself was conducted in a manner giving rise to criminal liability. Upon information and belief, Defendants Fritz and DreamScape have intentionally conducted business in Texas under the assumed name "DreamScape Development Group, Inc." while knowingly violating the assumed-name-registration requirements under Texas Business and Commerce Code Chapter 71, which is a Class A misdemeanor under Texas law. *See* Tex. Bus. & Comm. Code § 71.202.

## JURY DEMAND

66. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, CHU de Québec – Université de Laval prays for judgment against Defendants as follows:

A. Awarding actual damages to Plaintiff in an amount no less than $5,250,000.00, plus any pre- and post-judgment interest;

B. Awarding incidental and consequential damages to Plaintiff in an amount to be determined at trial, plus any pre- and post-judgment interest;

C. Awarding exemplary damages to Plaintiff in an amount to be determined at trial;

D. Awarding Plaintiff its costs and its attorney's fees pursuant to Texas Civil Practice and Remedies Code Chapter 38;

E.  Awarding Plaintiff its expenses, including attorney's fees, incurred in locating and effecting service of process on Defendants pursuant to Texas Business and Commerce Code section 71.201(b); and

F.  For such further and additional relief as the Court deems just and equitable.

DATE: March 5, 2021

Respectfully submitted,

*/s/ Andrew D. Bergman*
Andrew D. Bergman
Texas Bar No. 24101507
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002-2755
andrew.bergman@arnoldporter.com
Tel.: +1 713.576.2400
Fax: +1 713.576.2499

James D. Herschlein
Brianna Walsh
Of Counsel
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
james.herschlein@arnoldporter.com
brianna.walsh@arnoldporter.com
Tel.: +1 212.836.8000
Fax: +1 212.836.8689

*Attorneys for Plaintiff CHU de Québec – Université de Laval*