UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHU DE QUEBEC – UNIVERSITE LAVAL | § § § |
| v. | §    CIVIL NO. 4:21-CV-182-SDJ |
| DREAMSCAPE DEVELOPMENT GROUP HOLDINGS, INC., ET AL. | § § § § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant DreamScape Development Group, Inc.'s Motion to Partially Dismiss Plaintiff's First Amended Complaint. (Dkt. #62). Plaintiff CHU de Quebec–Universite Laval ("CHU de Quebec") responded in opposition. (Dkt. #69). DreamScape Development Group, Inc. ("DDGI") has not filed a reply, and its deadline to do so has passed. Having considered the motion to dismiss, the response, and the applicable law, the Court concludes that the motion should be **DENIED**.

### I. BACKGROUND

This case arose from a business deal involving the purchase of three million surgical-grade N-95 face masks. By early March 2020, COVID-19, the respiratory disease caused by the novel coronavirus SARS-CoV-2, had started to spread across North America. Healthcare facilities in the Canadian province of Quebec were scrambling to procure large amounts of personal protective equipment ("PPE") to prepare for potential outbreaks. (Dkt. #45 ¶¶ 13–14). The Ministry of Health and Social Services in Quebec empowered the Centre d'Acquisitions Gouvernementales ("CAG"), a nonprofit organization representing health establishments in Quebec, to

1

manage the sourcing of PPE to health and social services establishments in the province. (Dkt. #45 ¶ 7–8).

Shortly after the pandemic started, the Ministry of Health also tasked CHU de Quebec, the largest university hospital network in the province, with responsibility for overseeing the supply and distribution of PPE to healthcare facilities across Quebec. (Dkt. #45 ¶¶ 1, 14). During this time, CAG acted as CHU de Quebec's agent in procuring PPE. (Dkt. #45 ¶ 8). Working with CAG, CHU de Quebec looked to both traditional and nontraditional suppliers of PPE in an effort to obtain 3M certified N-95 masks. (Dkt. #45 ¶¶ 14–15).

On April 6, 2020, a representative of R Negotiations advised CAG that R Negotiations could help CAG procure a large quantity of 3M N-95 masks for CHU de Quebec. (Dkt. #45 ¶ 16). R Negotiations gave CAG pricing and delivery information. (Dkt. #45 ¶ 16). The representative also advised CAG that he would need to place funds to purchase the masks into escrow with R Negotiations' attorney, Gregory Kuczinski. (Dkt. #45 ¶ 16). Consistent with R Negotiations' directions, CAG instructed CHU de Quebec to issue purchase orders totaling $18 million for three million N-95 masks and to transfer the funds to Kuczinski's attorney escrow account. (Dkt. #45 ¶¶ 17–18). CHU de Quebec issued the purchase orders and completed the wire transfer totaling $18 million, but the masks were not delivered. (Dkt. #45 ¶¶ 19–21). At that point, CHU de Quebec cancelled the purchase orders. (Dkt. #45 ¶ 21). R Negotiations and Kuczinski returned approximately $12.5 million of the funds but continued to try to source N-95 masks for CHU de Quebec. (Dkt. #45 ¶ 21).

While attempting to source masks for CHU de Quebec, R Negotiations and Kuczinski encountered Darrel Fritz. (Dkt. #45 ¶ 21). Fritz, who purported to act on behalf of DDGI or DreamScape Development Group Holdings, Inc. ("DDGHI"), or both, represented to R Negotiations and Kuczinski that he was in contact with an authorized 3M vendor and could supply the N-95 masks. (Dkt. #45 ¶ 21–22). To support these representations, Fritz provided documents that allegedly contained doctored images of 3M orders for a different customer—orders that were not made by Fritz. (Dkt. #45 ¶ 23).

On April 16, 2020, R Negotiations and Kuczinski, "acting as CHU's agents," entered into an agreement with Fritz. (Dkt. #45 ¶ 24). Fritz, purporting to act on behalf of DDGI or DDGHI, or both, agreed to provide CHU de Quebec, through R Negotiations, with three million 3M N-95 masks. (Dkt. #45 ¶ 24). In exchange, R Negotiations and Kuczinski would make an escrow deposit of $5.25 million and wire the funds to Fritz's escrow account under DDGI's name. (Dkt. #45 ¶ 24). The agreement also provided that the $5.25 million escrow deposit would be returned if the masks were not produced within two weeks. (Dkt. #45 ¶ 25). Fritz signed the agreement for DDGI, which at the time was a void corporate entity and not an assumed name registered to either Fritz or DDGHI. (Dkt. #45 ¶¶ 24, 26). The terms of the agreement, as set forth in the April 16 letter, are copied below:

> The above reference escrow was transferred to your Escrow account with Morgan Stanley on April 15, 2020, from my Attorney Escrow Account as Escrow Agent. This transfer represented the requisite deposit for the production of 3,000,000.00 3M N-95 masks, model 1860, on behalf of the end buyer. As discussed with you, our client the end buyer in this transaction, is not only in dire need of these masks, but due to previous

3

> unsuccessful attempts to obtain the same, has placed a time limit on the production of these masks. Accordingly, if you are unable to produce the entire or at least a partial order of the masks within two weeks of today, then the client requests the full return of the above referenced escrow. You have agreed to these conditions. Accordingly, I have entered into an escrow agreement with the end buyer outlining this [*sic*] these conditions

(Dkt. #45 ¶ 25 (emphasis omitted)).

Kuczinski wired $5.25 million to Fritz's escrow account, but Fritz failed to provide any N-95 masks by the two-week deadline. (Dkt. #45 ¶¶ 27–28). After the deadline passed, CAG advised R Negotiations and Kuczinski that the deal was cancelled and demanded immediate reimbursement of the $5.25 million escrow deposit. (Dkt. #45 ¶ 29). Kuczinski, in turn, notified Fritz that "the client" was demanding immediate reimbursement of the escrow deposit, including interest. (Dkt. #45 ¶ 30). Despite repeated demands, Fritz failed or refused to return any of the $5.25 million. (Dkt. #45 ¶¶ 31–32). Instead, Fritz allegedly disposed of all of the $5.25 million by transferring the funds to third parties and to a personal bank account in his name. (Dkt. #45 ¶ 33).

This lawsuit followed. In the operative complaint, CHU de Quebec has brought claims against Fritz, DDGI, and DDGHI for (1) breach of contract, (2) fraud, (3) unjust enrichment, (4) civil theft, and (5) conversion. CHU de Quebec also asserts that, at all relevant times, Fritz operated DDGI and DDGHI as alter egos of himself.

DDGI now moves to dismiss CHU de Quebec's claims for breach of contract, fraud, and unjust enrichment under Federal Rules of Civil Procedure 12(b)(6) and

12(b)(7). (Dkt. #62). The Court should dismiss these claims, DDGI says, because CHU de Quebec lacks contractual standing and has failed to join indispensable parties.

## II. LEGAL STANDARDS

### A. Legal Standard for Rule 12(b)(6) Motions

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* The court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To determine whether the plaintiff has pleaded enough to "nudge[] [its] claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Ashcroft*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570). This threshold is surpassed when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In conducting this review, the court's inquiry is limited to "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of

which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

**B. Legal Standard for Rule 12(b)(7) Motions**

Under Rule 12(b)(7), a court may dismiss a complaint for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19, in turn, provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. FED. R. CIV. P. 19.

A Rule 12(b)(7) analysis entails a two-step inquiry. *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, a court must determine whether a party must be joined to the suit under Rule 19(a). *Id.* If joinder is required, the party will be brought into the lawsuit. *H.S. Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003). Under Rule 19(a), a person subject to service of process "whose joinder will not deprive the court of subject-matter jurisdiction" must be joined if: (1) "in that person's absence, the court cannot accord complete relief among existing parties"; or (2) "disposing of the action in the person's absence" would "impair or impede" that person's ability to protect a claimed interest or "leave an existing party subject to a substantial risk of incurring . . . inconsistent obligations." FED. R. CIV. P. 19(a)(1). At this step, the movant has the initial burden of showing that a missing party is required. *Hood*, 570 F.3d at 628. But after "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Id.* (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986)).

If a required party cannot be joined without destroying subject-matter jurisdiction, the court must look to Rule 19(b) to determine whether the party is "indispensable, that is, whether litigation can be properly pursued without the absent party." *Id.* at 629 (quotation omitted). In other words, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). Factors to consider when making this determination include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

### III. DISCUSSION

DDGI urges the Court to dismiss CHU de Quebec's claims for breach of contract, fraud, and unjust enrichment on two independent grounds. First, DDGI argues that CHU de Quebec lacks standing to bring these claims because it did not authorize Kuczinski to enter into the agreement for the N-95 masks and because CHU de Quebec itself was an agent, rather than a principal. Second, DDGI contends that Kuczinski and R Negotiations are required parties whose absence requires dismissal. The Court addresses these arguments in turn.

**A. Whether CHU de Quebec has Failed to State a Claim**

The Court first addresses DDGI's arguments that CHU de Quebec has failed to state a plausible claim for breach of contract, fraud, or unjust enrichment.

**i. Breach of Contract**

DDGI argues that CHU de Quebec has no contractual standing or other right to sue on the April 16 letter agreement because Kuczinski was acting outside the scope of his agency when he entered into the agreement. This argument fails for two independent reasons.

First, DDGI's argument is not based on CHU de Quebec's factual allegations. Instead, DDGI appears to rely on matters outside the complaint. According to DDGI, CHU de Quebec "admits Kuczinski was acting outside the scope of his employment" because CHU de Quebec "states that it never consented to the transfer of funds to which Kuczinski committed in the alleged contract." (Dkt. #62 ¶ 18). This purported admission appears nowhere in CHU de Quebec's complaint. And, contrary to DDGI's suggestion, this Court may not "look beyond the factual allegations in the complaint so long as it accepts the factual allegations in the complaint as true" to determine whether CHU de Quebec has stated a plausible claim.[1] (Dkt. #62 ¶ 18). Rather, as explained above, the Court's review under Rule 12(b)(6) is limited to "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker*, 938 F.3d at 735.

---

[1] The cases DDGI cites for its argument that the Court may consider extrinsic evidence on a motion to dismiss involved subject-matter jurisdiction challenges brought under Rule 12(b)(1). (Dkt. #62 ¶ 18 (citing *La Botz v. Fed. Elec. Comm'n*, 61 F.Supp.3d 21, 27 (D.D.C. 2014); and *Flores ex rel J.F. v. District of Columbia*, 437 F.Supp.2d 22, 28 (D.D.C. 2006))). DDGI's motion does not challenge subject-matter jurisdiction, and its contractual standing argument is specifically brought under Rule 12(b)(6). *See* (Dkt. #62 ¶ 13).

Looking to the complaint, the alleged facts refute—rather than support—DDGI's argument. CHU de Quebec alleges, for example, that "R Negotiations and Kuczinski, *acting as CHU's agents*, entered into an agreement with Fritz . . . whereby Defendants agreed to provide CHU, through R Negotiations, with 3 million 3M N-95 1860 Masks." (Dkt. #45 ¶ 24 (emphasis added)). The complaint also provides that "CHU, *acting through purchasing agents* CAG, R Negotiations, and *Kuczinski*, transferred to Fritz an escrow deposit of $5.25 million in exchange for Fritz's agreement to deliver the 3M N-95 1860 Masks." (Dkt. #45 ¶ 35 (emphases added)). Accepting the well-pleaded allegations in the complaint as true, it is plausible that Kuczinski was acting within the scope of his agency when he entered into the April 16 agreement. Thus, DDGI's argument that CHU de Quebec was not a party to the agreement by agency fails.

Second, even if Kuczinski acted outside his authority when he transferred the funds to Defendants pursuant to the April 16 agreement, it is plausible to infer from the alleged facts that CHU de Quebec was a third-party beneficiary to that agreement. Under Texas law, a "third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). Because "a presumption exists that parties contracted for themselves," the "intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.*

9

Here, the April 16 agreement expressly references "the end buyer" multiple times and specifically provides that Kuczinski transferred the escrow funds "for the production of 3,000,000.00 3M N-95 masks, model 1860, *on behalf of the end buyer*." (Dkt. #45 ¶ 25 (emphasis added)). The agreement also makes clear that the "end buyer" was "in dire need of these masks" and "requests the full return of the [$5.25 million]" if no masks were produced within two weeks. (Dkt. #45 ¶ 25). Based on these terms, it "clearly appears" from the agreement that Kuczinski and Fritz "intended a third party to benefit from the contract." *MCI Telecomms. Corp.*, 995 S.W.2d at 651. This conclusion is also consistent with the allegations in the complaint that Kuczinski entered into the agreement and transferred the escrow funds for the benefit of CHU de Quebec—the alleged end buyer and payor of the $5.25 million at issue. (Dkt. #45 ¶¶ 20–21, 24–25, 27). Accordingly, based on the facts alleged in the complaint, it is plausible that CHU de Quebec is, at the very least, a third-party beneficiary to the agreement under Texas law.

Taking a different angle, DDGI next argues that CHU de Quebec lacks contractual standing to bring this suit because either CAG or the Ministry of Health is the principal and true beneficiary of the agreement. True, the Ministry of Health allegedly "tasked" CHU de Quebec "with the responsibility of overseeing the supply and distribution of PPE to healthcare establishments across Québec." (Dkt. #45 ¶ 14). It is also true, based on the complaint, that CAG "instructed" CHU de Quebec to issue purchase orders to R Negotiations for the procurement of N-95 masks. (Dkt. #45

10

¶ 18). While these allegations may lend some support to DDGI's argument, they must be read in the context of the complaint as a whole.

According to the complaint, "CAG was acting as CHU's agent in procuring PPE"—not the other way around. (Dkt. #45 ¶ 8). And, as explained above, it is plausible to infer from the complaint that CHU de Quebec was the "end buyer" in dire need of the masks that paid the $5.25 million in connection with the transaction at issue. (Dkt. #45 ¶¶ 19–27). Contrary to DDGI's suggestion, nowhere in the complaint does CHU de Quebec allege that either CAG or the Ministry of Health financed the $5.25 million at issue. Thus, accepting the complaint's allegations as true and viewing them in the light most favorable to CHU de Quebec, DDGI's arguments at best raise a fact question on agency not suitable for disposition under Rule 12(b)(6).[2]

For these reasons, dismissal of CHU de Quebec's breach-of-contract claim under Rule 12(b)(6) is inappropriate.

### ii. Fraud

In a single paragraph, DDGI contends that its lack-of-standing defense also requires dismissal of CHU de Quebec's fraud claim. (Dkt. #62 ¶ 19). This argument is also meritless. To begin with, contractual privity is not required to support standing for a fraud claim under Texas law. *See, e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 323 ("Texas does not require that there be privity between the alleged target of the fraud and the fraudfeasor."). Rather,

---

[2] Because CHU de Quebec has plausibly alleged sufficient facts to enforce the contract directly as a principal or as a third-party beneficiary, the Court need not address the parties' arguments as to whether CHU de Quebec has standing to sue as an agent on the contract.

as CHU de Quebec correctly notes, (Dkt. #69 at 12), standing under Texas law for a fraud claim only turns on whether the plaintiff has plausibly alleged that the defendant made a material representation with the intent that the plaintiff should act upon it, that such representation was false when made and the defendant knew the representation was false or made it recklessly without knowledge of its truth and as a positive assertion, and the plaintiff acted in reliance upon it and suffered injury as a result. *Id.* (citing *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr. Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993)). In its amended complaint, CHU de Quebec has plausibly alleged each such element of a fraud claim, as DDGI impliedly concedes.

Further, even if contractual privity were a prerequisite to CHU de Quebec's fraud claim, as the Court has already explained, CHU de Quebec has pleaded sufficient facts to support a plausible inference that it has contractual standing or, at the very least, may enforce the agreement as a third-party beneficiary. *See supra* Part III(A)(i). Because the allegations in the complaint are sufficient to allow the Court to draw the reasonable inference that DDGI is liable for the misconduct alleged, dismissal of CHU de Quebec's fraud claim at the pleading stage is also not appropriate. *See Iqbal*, 556 U.S. at 678.

### iii. Unjust Enrichment

DDGI also moves to dismiss CHU de Quebec's unjust-enrichment claim. In its motion, DDGI notes in passing that "Texas appellate courts are split on whether unjust enrichment is an independent cause of action or limited to an equitable defensive issue." (Dkt. #62 ¶ 20). DDGI is correct: intermediate appellate courts in Texas are divided on whether unjust enrichment is recognized as an independent

12

cause of action or is merely recognized as a quasi-contractual theory of recovery. *In re Okedokun*, 968 F.3d 378, 391 (5th Cir. 2020). However, the Supreme Court of Texas has previously recognized that unjust enrichment can be an independent cause of action, *see HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998), and has otherwise repeatedly treated unjust enrichment as an independent cause of action, *see, e.g.*, *Elledge v. Friberg-Cooper Water Sup.*, 240 S.W.3d 869, 870 (Tex. 2007) (reaffirming that limitations period for unjust-enrichment claims is two years); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (discussing limitations period for unjust-enrichment claims); *Fortune Prod. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000) (referring to unjust-enrichment cause of action). Under the circumstances, the Fifth Circuit has previously assumed, for purposes of appeal, that unjust enrichment is an independent cause of action under Texas law. *Elias v. Pilo*, 781 F.App'x 336, 339 n.3 (5th Cir. 2019) (per curiam).

Given that Texas Supreme Court precedent suggests unjust enrichment can be an independent cause of action and that DDGI has not made a developed argument for dismissal on this basis or referenced any Fifth Circuit precedent instructing courts not to recognize unjust enrichment as an independent cause of action under Texas law, the Court declines to dismiss the claim at this stage of proceedings. Rather, at the Rule 12(b)(6) stage, the Court will assume that unjust enrichment may serve as a standalone cause of action under Texas law and allow CHU de Quebec to plead unjust enrichment in the alternative to its breach-of-contract claim.

As with the claims for breach of contract and for fraud, DDGI contends that its lack-of-standing defense also requires dismissal of CHU de Quebec's unjust-enrichment claim. Specifically, DDGI contends that CHU de Quebec "lacks standing to assert the unjust enrichment claim" because "Kuczinski was acting outside his authority when he entered into the Contract that resulted in transfer of the $5.25 million." (Dkt. #62 ¶ 20). But as explained above, the facts alleged are sufficient to support a reasonable inference that Kuczinski *was* acting within the scope of his authority when he entered into the April 16 agreement on CHU de Quebec's behalf. So this argument, once again, fails.

Under Texas law, a "party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (same). CHU de Quebec's well-pleaded allegations, when taken as true, lead to the plausible inference that DDGI, through fraud or taking of undue advantage, acquired and retained at least some of the $5.25 million belonging to CHU de Quebec. That is sufficient at the pleading stage for CHU de Quebec's unjust-enrichment claim to survive dismissal.

### B. Whether CHU de Quebec Failed to Join Indispensable Parties

The Court now turns to whether R Negotiations and Kuczinski are indispensable parties to this action such that dismissal of CHU de Quebec's claims for breach of contract, fraud, and unjust enrichment is required under Rule 12(b)(7).

As discussed above, the first step of the Rule 12(b)(7) analysis is to determine whether R Negotiations and Kuczinski are required parties under Rule 19(a). *Hood*, 570 F.3d at 628. A person subject to service of process "whose joinder will not deprive the court of subject-matter jurisdiction" must be joined if: (1) "in that person's absence, the court cannot accord complete relief among existing parties"; or (2) "disposing of the action in the person's absence" would "impair or impede" that person's ability to protect a claimed interest or "leave an existing party subject to a substantial risk of incurring . . . inconsistent obligations." FED. R. CIV. P. 19(a)(1).

DDGI contends that R Negotiations and Kuczinski are "required parties because they have a legally protected interest [related to] the suit" and because proceeding in their absence would expose DDGI to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." (Dkt. #62 ¶ 27). "Because Kuczinski was acting outside the scope of his authority" when he entered into the April 16 agreement, DDGI's argument goes, "he becomes personally liable to CHU." (Dkt. #62 ¶ 28). Thus, says DDGI, "nothing prevents CHU from . . . bringing suit against Kuczinski and/or R Negotiations who in turn would seek remuneration from [DDGI]," which "naturally will be prejudicial to" DDGI. (Dkt. #62 ¶ 28). The Court is not persuaded.

For starters, DDGI's argument rests on a faulty premise. CHU de Quebec has plausibly alleged that Kuczinski and R Negotiations were acting as agents for CHU de Quebec in connection with the transaction at issue. DDGI has not pointed to any facts alleged in the complaint indicating that Kuczinski or R Negotiations were acting

15

outside the scope of their agency when they entered the agreement for the masks on behalf of CHU de Quebec. Thus, besides conclusory assertions, DDGI offers no support for the conclusion that either Kuczinski or R Negotiations "claims an interest relating to the subject of the action." FED. R. CIV. P. 19(a)(1). Accordingly, DDGI has failed to show that Kuczinski's and R Negotiations' presence in this case is necessary to protect their interests, accord complete relief among the existing parties, or prevent a substantial risk of inconsistent obligations.

The last point deserves elaboration. It is the threat of inconsistent *obligations*—not multiple litigation—that implicates Rule 19(a). *Boone v. Gen. Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir. 1982). Inconsistent obligations are not the same as inconsistent adjudications or results. *See id.* (distinguishing the possibility of "multiple litigation" from the "possibility of inconsistent obligations"). As the First Circuit aptly explained:

> Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

*Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (per curiam) (citing, among others, *Boone*, 682 F.2d at 554); *see also Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014) (same); *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 282 (6th Cir. 2009) (Sutton, J., concurring) ("Inconsistent obligations arise only when a party cannot simultaneously comply with the orders of different courts.").

Here, DDGI does not claim that it faces inconsistent obligations—that it will be unable to comply with one court's order without breaching the order of another court concerning the same incident. DDGI's asserted fears of subsequent litigation with Kuczinski or R Negotiations, instead, merely reflect a risk of multiple or inconsistent adjudications, which does not require joinder under Rule 19(a). *See Boone*, 682 F.2d at 554; *Hunter Douglas, Inc. v. Menendez*, No. 4:21-CV-741, 2022 WL 811067, at *10 (E.D. Tex. Mar. 16, 2022) ("Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident does not necessitate joinder of all the parties."). Thus, DDGI's argument is of no avail.

In sum, DDGI has not met its burden to show that it faces "inconsistent obligations" or has any other Rule 19(a) hook on which to hang its mandatory joinder hat. *See Hood*, 570 F.3d at 628 (placing the initial burden on the movant to show that a missing party is required). Because DDGI has failed to show that either R Negotiations or Kuczinski is a required party under Rule 19(a), "no inquiry under Rule 19(b) is necessary." *Nat'l Cas. Co. v. Gonzalez*, 637 F.App'x 812, 815 (5th Cir. 2016) (per curiam) (quoting *Temple v. Synthes Corp.*, 498 U.S. 5, 8, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990)). Accordingly, DDGI's motion to dismiss under Rule 12(b)(7) will be denied.

## IV. CONCLUSION

For the foregoing reasons, DDGI's Motion to Partially Dismiss Plaintiff's First Amended Complaint, (Dkt. #62), is **DENIED**.

**So ORDERED and SIGNED this 16th day of August, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE