UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHU DE QUEBEC – UNIVERSITE LAVAL § § § <br> v. § § <br> DREAMSCAPE DEVELOPMENT § GROUP HOLDINGS, INC., ET AL. § | CIVIL NO. 4:21-CV-182-SDJ |

## MEMORANDUM OPINION AND ORDER

Plaintiff CHU de Quebec–Universite Laval ("CHU de Quebec") brought this lawsuit against Defendants Darrel Fritz, Dreamscape Development Group, Inc. ("DDGI"), and Dreamscape Development Group Holdings, Inc. ("DDGHI"), seeking redress for claims related to a business deal involving the purchase of three million surgical-grade N-95 face masks during the COVID-19 pandemic.

Before the Court is DDGI's Motion for Leave to Add Third-Party Defendants, (Dkt. #138), in which DDGI seeks to join Erick Kenneth Garofano ("Garofano") and Primex Clinical Laboratories, Inc. ("Primex"), into this action.[1] CHU de Quebec opposes the motion. (Dkt. #142). Having considered the motion, the subsequent briefing, the parties' arguments, and the applicable law, the Court concludes that the motion should be **DENIED**.

### I. BACKGROUND

By early March 2020, COVID-19, the respiratory disease caused by the novel coronavirus SARS-CoV-2, had started to spread across North America. Healthcare

---

[1] Defendants DDGHI and Fritz have joined DDGI's motion. For purposes of this order, DDGI will be referenced as the movant.

1

facilities in the Canadian province of Quebec were scrambling to procure large amounts of personal protective equipment ("PPE") to prepare for potential outbreaks. (Dkt. #45 ¶¶ 13–14). Shortly after the pandemic started, CHU de Quebec, a non-profit organization created under Canadian law and the largest university hospital network in Quebec, was tasked by the province's Ministry of Health and Social Services with overseeing the supply and distribution of PPE to healthcare facilities across Quebec. (Dkt. #45 ¶¶ 1, 14).

While attempting to source masks for this project, CHU de Quebec's agents, R Negotiations and Gregory Kuczinski, encountered Darrel Fritz, who purported to act on behalf of DDGI and DDGHI. (Dkt. #45 ¶ 21). Fritz represented that, through a 3M vendor, he could provide 3M N-95 masks. (Dkt. #45 ¶ 22). On April 16, 2020, R Negotiations and Kuczinski entered into an agreement with Fritz whereby he agreed to provide CHU de Quebec, through R Negotiations, with three million 3M N-95 masks. (Dkt. #45 ¶ 24). In exchange, R Negotiations and Kuczinski would make an escrow deposit of $5.25 million and wire the funds to Fritz's escrow account under the name of DDGI, Fritz's company. (Dkt. #45 ¶ 24). The agreement also provided that the $5.25 million escrow deposit would be returned if the masks were not produced within two weeks. (Dkt. #45 ¶ 25).

Kuczinski wired $5.25 million to Fritz's escrow account, but Fritz failed to provide the masks within the two-week deadline. (Dkt. #45 ¶¶ 27–28). Thereafter, Fritz failed to provide any masks and refused to return any of the $5.25 million escrow deposit. (Dkt. #45 ¶¶ 28–32).

2

This lawsuit followed. In the operative complaint, CHU de Quebec has brought claims against Fritz, DDGI, and DDGHI for: (1) breach of contract; (2) fraud; (3) unjust enrichment; (4) civil theft; and (5) conversion. CHU de Quebec also asserts that, at all relevant times, Fritz operated DDGI and DDGHI as alter egos of himself.

After suit was initiated in March 2021, the parties filed their Amended Joint Report of Attorney Conference on May 27, 2021, in which Defendants asserted that their reason for failing to perform under the contract was a failure on the part of their mask supplier, Primex. (Dkt. #20 at 4). The Court issued a scheduling order on June 24, 2021, which put the parties on notice that the deadline to add parties to the suit was July 28, 2021. (Dkt. #29 at 1). On July 31, 2022, over a year after the deadline to add parties, DDGI filed this motion seeking to add Primex and its Chief Operating Officer, Garofano, as a party.

## II. Legal Standard

### A. Required Joinder Under Rule 19

Federal Rule of Civil Procedure 19, entitled "Required Joinder of Parties," addresses the mandatory joinder of a "required party" who is "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19. Under the Rule, a person is a required party if (1) the person's absence will prevent the court from "accord[ing] complete relief among existing parties," or (2) the person has an interest in the subject of the case, and disposing of it in the person's absence will either "impair or impede the person's ability to protect the interest," or create a risk of multiple or inconsistent obligations for an existing party because of the interest. Fed. R. Civ. P. 19(a)(1)(A)–(B).

3

A court must carefully examine the facts when deciding if Rule 19 joinder is proper, with the movant bearing the initial burden of demonstrating that an absent party is necessary, after which the burden shifts to the party opposing joinder. *Timberlake v. Synthes Spine, Inc.*, No. V-08-4, 2011 WL 2607044, at *2 (S.D. Tex. June 30, 2011) (citing *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009)).

### B. Permissive Joinder Under Rule 20

Federal Rule of Civil Procedure 20 allows for permissive joinder of defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). Even when this standard is satisfied, a district court may still refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness. *CheckPoint Fluidic Sys. Intern., Ltd. v. Guccione*, No. 10-4505, 2011 WL 3268386, at *8 (E.D. La. July 28, 2011).

"To determine what constitutes a 'transaction or occurrence' for purposes of Rule 20(a) and the first prong of the test allowing joinder, courts look to the definitions of these same terms in the analysis of compulsory counterclaims under Rule 13(a)." *Id.* (citing *Nor–Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir. 1973)). Thus, under the first part of a two-prong test, the court determines whether the claims arise out of the same transaction, occurrence, or series of transactions or occurrences. *Id.* at *9. The second prong of a Rule 20 joinder analysis is whether a

question of law or fact common to all the defendants will arise in the action. *Id.* Rule 20(a) does not require that every question of law or fact in the action be common among the parties, but rather allows for joinder if there is even one common question. *Id.*

### III. DISCUSSION

DDGI's motion to join Garofano and Primex into this action fails for several reasons. First, the motion fails to comply with Local Rule CV-7(k), which requires that, when a motion for leave to file a document is submitted, the document for which leave is sought must also be filed. Second, DDGI's motion is untimely, as it was filed over a year after the deadline imposed by the Court's scheduling order and without any legitimate excuse for the delay. Finally, DDGI's motion also fails because neither Rule 19 or Rule 20 supports the joinder of Garofano or Primex into this lawsuit.

**A. DDGI's Motion fails to comply with Local Rule CV-7(k).**

At the outset, DDGI's motion must be denied for failure to comply with Local Rule CV-7(k). "Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012); *see also SEC v. Downey*, 701 F. App'x 399, 399 (5th Cir. 2017) (affirming district court's denial of motion based on failure to comply with local rules); *Hines v. Columbus, Miss.*, No. 1:21-CV-52-DMB-RP, 2022 WL 4473893, at *1 (N.D. Miss. Sept. 26, 2022) (denying motion to strike due to the movant's failure to comply with local rules).

Local Rule CV-7(k) provides in relevant part that "[m]otions for leave to file a document should be filed separately and immediately before the document for which

leave is sought." Local Rule CV-7(k). DDGI's motion did not include a copy of its proposed third-party complaint as required. Indeed, DDGI only included a copy as an exhibit attached to their untimely proposed reply to CHU de Quebec's response, (Dkt. #145-2). However, that reply was stricken because it too failed to comply with the relevant procedural rules. (Dkt. #150 at 1). Accordingly, the proposed third-party complaint which DDGI seeks to file is still not part of the record.

DDGI's failure to include its proposed third-party complaint is particularly problematic here because, without the complaint, it is difficult for the Court to evaluate the nature of the purported claims against Garofano and Primex, or to determine whether the Court has personal jurisdiction over these proposed new parties. For this reason alone, the motion will be denied.

**B. The Motion is untimely.**

DDGI's motion is also untimely. The scheduling order in this case set July 28, 2021, as the deadline to add parties. DDGI filed the instant motion on July 31, 2022, over a year after that deadline had passed. DDGI has not shown excusable neglect or good cause to modify the scheduling order so as to extend deadlines regarding the addition of parties. *See* FED. R. CIV. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect."); FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) ("The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite

6

the diligence of the party needing the extension.") (internal quotation marks and citation omitted).

Notably, DDGI's motion does not even address excusable neglect. Given the record before the Court, the omission is unsurprising. As CHU de Quebec correctly notes, as early as August 2020, approximately six months before this lawsuit was filed, attorneys acting on behalf of Defendants threatened litigation against Primex based on the same failure to perform discussed in DDGI's motion. *See* (Dkt. #142-1) (August 5, 2020, email from Defendants' attorney to Garafano, Primex's Chief Operating Officer, threatening "legal actions" against Primex for failing to deliver 3M N-95 masks after accepting payment from DDGI). Nearly a year later, and after this suit was initiated in March 2021, the parties filed their Amended Joint Report of Attorney Conference on May 27, 2021, in which Defendants asserted that their failure to perform under the contract was due to a failure on the part of their supplier, Primex. (Dkt. #20 at 4).[2] Thus, at the outset of proceedings before this Court Defendants made clear that, in their view, their alleged failures to meet their obligations to CHU de Quebec were driven by Primex's acts or omissions.

DDGI nonetheless asserts that, somehow, it was only when Defendants received a document production from CHU de Quebec in April 2022, which included information purportedly supporting Defendants' contention that they had been defrauded by Garafano and Primex, that Defendants became aware of potential

---

[2] Although DDGI was not yet a Defendant in the case when the Amended Joint Report was submitted, the gist of Defendants' allegations against Primex has not changed since DDGI was joined as a Defendant in December 2021.

7

claims against Garafano and Primex. Nonetheless, Defendants still waited several months, until July 31, 2022, to seek leave to file a third-party complaint against Garafano and Primex. *See* (Dkt. #138).

Under the circumstances, DDGI has not shown good cause for its failure to meet the Court's deadline to add parties. To the contrary, despite being aware of claims against Garafano and Primex months before this suit was even initiated, and as confirmed by Defendants in their Amended Joint Report to this Court in May 2021, Defendants waited over a year to attempt to add Garafano and Primex. Defendants' actions demonstrate that they were not diligent, and that they engaged in unwarranted delay concerning their motion to add Garafano and Primex.

DDGI suggests that Defendants were unaware that Primex and Garofano had engaged in fraudulent activities until they received CHU de Quebec's April 2022 document production. (Dkt. #138 at 11—12). But even assuming this is true concerning a potential fraud claim against Garofano and Primex, Defendants have conceded that they were aware of a potential breach of contract claim against Primex for years. Indeed, Defendants were aware of such a claim as soon as Primex failed to deliver the masks to DDGI. *See* (Dkt. #138 at 11) ("Mr. Fritz believed that the only legitimate cause of action against Primex was a breach of contract action."). And again, even assuming Defendants first became aware of a potential fraud claim against Garofano and Primex in April 2022, they delayed several additional months before attempting to add Garofano and Primex to this action.

8

In sum, for nearly two years prior to DDGI's motion Defendants were aware of Garofano and Primex's role, if any, in Defendants' failure to meet their obligations to CHU de Quebec. For reasons that remain murky, Defendants waited until over a year past the deadline in the Court's scheduling order to attempt to add Garofano and Primex to this suit. DDGI's motion therefore must also be denied as untimely.

**C. Neither Rule 19 nor Rule 20 supports DDGI's requested relief.**

Beyond DDGI's failure to comply with the Local Rules and the untimeliness of its motion to add Garofano and Primex, the motion also substantively fails because neither Rule 19 nor Rule 20 support DDGI's requested relief.

### i. Rule 19 is inapplicable.

Primex and Garofano are not indispensable parties under Rule 19. Under the Rule, a person is a required party only if the person's absence will prevent the court from "accord[ing] complete relief among existing parties," or the person has an interest in the subject of the case, and disposing of it in the person's absence will either "impair or impede the person's ability to protect the interest," or create a risk of multiple or inconsistent obligations for an existing party because of the interest. FED. R. CIV. P. 19(a)(1)(A)–(B); *see also supra* Part II.A. Neither Primex nor Garofano claims any interest in this case, so the second category of Rule 19 is plainly inapplicable.

The first category of Rule 19 is equally inapplicable. CHU de Quebec' claims in this case are asserted solely against Defendants. The Amended Complaint does not even reference Primex, and no party other than Defendants is needed to "accord complete relief among existing parties." FED. R. CIV. P. 19(a)(1)(A). CHU de Quebec

9

sent no money to Primex or Garofano, did not contract with them, had no dealings with them, and accordingly has not sued them.

Instead, CHU de Quebec is suing on its contract with Defendants, alternatively for unjust enrichment concerning escrow monies sent to and received by Defendants, and for Defendants' misrepresentations and conversion of escrow funds. Because all of CHU de Quebec's claims concern the direct acts and omissions of Defendants themselves, and not any actions of Primex or Garofano, relief can be apportioned among CHU de Quebec and Defendants without the need to add Primex or Garofano to the case. *See Sorrels Steel Co., Inc. v. Great Sw. Corp.*, 906 F.2d 158, 168 (5th Cir. 1990) (when complete relief, including damages, can be provided, absent person is not indispensable).

### ii. Rule 20 is inapplicable.

Primex and Garofano also cannot be properly joined under Rule 20, which allows joinder of a defendant if a right to relief is asserted against them in connection with the same transaction or series of transactions and any question of law or fact common to all defendants will arise in the action. *See* FED. R. CIV. P. 20(a). *See also supra* Part II.B.

DDGI argues that, because Primex and Garofano fraudulently induced Defendants into attempting to purchase the N-95 masks from Primex, their actions were "the catalyst which brought forth this very lawsuit." (Dkt. #138 at 9). Not so. This lawsuit concerns an agreement between CHU de Quebec and Defendants, to which neither Primex nor Garofano is a party. Under the contract, Defendants were required to either deliver a set quantity of N-95 masks within a prescribed time frame

or return a $5.25 million escrow deposit. Defendants failed to deliver the masks and failed to return the deposit. These are the transactions and occurrences at issue in this case.

Defendants' dealings with Primex and Garofano are *separate* transactions and occurrences that alter neither the terms of Defendants' contract with CHU de Quebec nor its obligation to deliver the masks or return the escrow funds. Likewise, the applicable law concerns the interpretation of Defendants' contract with CHU de Quebec, its representations to CHU de Quebec, and its handling of the $5.25 million escrow deposit received from CHU de Quebec's agents. Defendants' purported fraudulent-inducement claim against Primex and Garofano involves distinct transactions that did not involve CHU de Quebec, as well as distinct questions of law related to a *different* contract—the alleged agreement between Defendants and Primex.

Finally, even assuming arguendo that DDGI could demonstrate that joinder would otherwise be permissible under Rule 20(a)(2), the Court maintains "considerable discretion to deny joinder when it would not facilitate judicial economy." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010). Here, allowing the addition of Primex and Garofano would only frustrate, rather than further, judicial economy. At the time of DDGI's motion, this case had been pending for nearly a year and a half, discovery had been completed, and the dispositive motion deadline had passed. Indeed, CHU de Quebec had already filed its pending summary-judgment motion and briefing had been completed on the motion.

11

Allowing Defendants to add Primex and Garofano would largely, if not entirely, undo all the progress made in this case, requiring the reopening of discovery and related, substantial delays in the resolution of the parties' dispute. Accordingly, even if Rule 20's requirements were otherwise met, the Court would exercise its discretion, in the interest of judicial economy, to deny DDGI's motion.

## IV. CONCLUSION

For all of the foregoing reasons, DDGI's Motion for Leave to Add Third-Party Defendants, (Dkt. #138), is **DENIED**.

**So ORDERED and SIGNED this 29th day of March, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE