UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHU DE QUEBEC – UNIVERSITE LAVAL | § § § | |
| v. | § | CIVIL NO. 4:21-CV-182-SDJ |
| | § | |
| DREAMSCAPE DEVELOPMENT GROUP HOLDINGS, INC., ET AL. | § § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff CHU de Quebec – Universite Laval ("CHU de Quebec") seeks to recover more than $90,000.00 in attorney's fees and expenses incurred litigating discovery disputes in this action. The Court finds that, although CHU de Quebec is entitled to recover some of that amount, it is not entitled to recover all of it. CHU de Quebec's counsel is undoubtedly skilled and experienced. But compared to other skilled attorneys who have litigated similar cases in the community, CHU de Quebec's counsel charged unusually high rates. They also inadequately documented certain time entries, recorded excessive time for some tasks, and failed to establish the reasonableness of their requested litigation expenses. The Court therefore grants CHU de Quebec's fee application—but only in part. CHU de Quebec will be awarded $37,036.67 in fees and expenses under Federal Rule of Civil Procedure 37(a).

## I. BACKGROUND

### A. CHU de Quebec Files Suit Over the Failed Purchase of Three Million Surgical-Grade Masks.

This case involves the failed purchase of three million surgical-grade masks at the height of the COVID-19 pandemic. Plaintiff CHU de Quebec alleges that in

1

exchange for $5.25 million Defendant Darrell Fritz promised not only to deliver the masks promptly, but also to hold CHU de Quebec's purchase money in escrow and return the money should the masks not be delivered on time. In negotiating and executing the purchase, Fritz purported to act on behalf of Defendant DreamScape Development Group, Inc. ("DDGI") or Defendant DreamScape Development Group Holdings, Inc. ("DDGHI"), or both.

Instead of holding the $5.25 million in escrow, Fritz allegedly used Chu De Quebec's purchase money to reimburse other customers and buy his own home out of foreclosure. Fritz did not promptly deliver the masks as required under the purchase agreement. And when asked to return the purchase money, Fritz was unable to do so. CHU de Quebec filed suit against Fritz, DDGI, and DDGHI, asserting claims for (1) breach of contract, (2) fraud, (3) unjust enrichment, (4) theft, and (5) conversion. (Dkt. #45 ¶¶ 41–86).

## B. CHU de Quebec Files Two Motions Against Defendants Arising from a Dispute Over Written Discovery Requests.

In its efforts to prosecute the case, CHU de Quebec served written discovery requests on Defendants Fritz and DDGHI (collectively, "Defendants").[1] To some of these written discovery requests—which included requests for production, interrogatories, and requests for admission—Defendants asserted boilerplate objections and responses that fell short of the federal standards for discovery

---

[1] As used in this order, "Defendants" refers only to Defendants Fritz and DDGHI. CHU de Quebec's fee application seeks an attorney's fee award against only those Defendants—and not against DDGI. *See* (Dkt. #101 at 16) (requesting an attorney's fee award against Defendants Fritz and DDGHI only).

objections. *See CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-182-SDJ, 2022 WL 1719405, at *3–10 (E.D. Tex. May 27, 2022) (holding that several of Defendants' objections to the written discovery requests lacked merit).

CHU de Quebec informed Defendants of the deficiencies and provided them an opportunity to cure. But even after providing Defendants an opportunity to cure, conferring with opposing counsel, and participating in a teleconference with the Court, several of the objections remained inadequate. CHU de Quebec eventually filed two discovery motions relating to the written discovery requests: the first directed toward the requests for production and interrogatories (styled as a motion to compel), (Dkt. #54); the second directed toward the requests for admission (styled as a motion regarding the sufficiency of Defendants' responses), (Dkt. #72). Both motions concerned discovery requests on plainly relevant topics: for instance, (1) financial information for Defendants DDGI and DDGHI and (2) other information pertaining to the alleged purchase agreement for the three million surgical-grade masks. *CHU de Quebec*, 2022 WL 1719405, at *1, *3–9.

In response to the discovery motions, Defendants withdrew some, but not all, of their objections to the interrogatories and requests for production. They did not amend any responses to the requests for admission. The Court granted both motions and overruled Defendants' objections. *Id.* at *9–10.

**C. CHU de Quebec Opposes a Protective Order Regarding Third-Party Discovery.**

In addition to serving written discovery requests on Defendants, CHU de Quebec also served a subpoena on Morgan Stanley Smith Barney LLC ("Morgan Stanley") seeking bank records relevant to the case. Defendants sought a protective order blocking production of the records, (Dkt. #32)—but not until Morgan's Stanley's response deadline had already lapsed and the bank had produced the records.

CHU De Quebec opposed the motion for protective order on the grounds that it was moot and lacked merit. (Dkt. #36). The Court agreed that the motion was moot and denied it. (Dkt. #41). In denying the motion for protective order, the Court observed that the parties had separately entered an agreed protective order addressing the Morgan Stanley documents (among other things)—further obviating the need for entry of the opposed protective order.

**D. CHU de Quebec Seeks to Recover Attorney's Fees and Expenses.**

CHU de Quebec now seeks to recover more than $90,000.00 in attorney's fees and expenses incurred litigating the various discovery motions. The requested amount includes $78,481.50 in attorney's fees, which CHU de Quebec breaks down as follows:

| TABLE 3 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Motion to Compel** | | | | | | | |
| Name | 2021 Rate | 2021 Hours | 2021 Fees | 2022 Rate | 2022 Hours | 2022 Fees | Combined Fees for Both Years |
| Herschlein | $1,300.00 | 1.5 | $1,950.00 | $1,365.00 | 0.5 | $682.50 | $2,632.50 |
| Bergman | $845.00 | 14.4 | $12,168.00 | $930.00 | 7.8 | $7,254.00 | $19,422.00 |
| Sullivan | $550.00 | 2.4 | $1,320.00 | $595.00 | 0 | 0 | $1,320.00 |
| Ojionuka | $330.00 | 1.6 | $528.00 | N/A | 0 | 0 | $528.00 |
| Hodges | N/A | 0 | 0 | $420.00 | 1.4 | $588.00 | $588.00 |
| **Subtotal** | | 19.9 | $15,966.00 | | 9.7 | $8,524.50 | **$24,490.50** |
| **Motion Regarding RFA Answers** | | | | | | | |
| Herschlein | $1,300.00 | 0 | 0 | $1,365.00 | 0.8 | $1,092.00 | $1,092.00 |
| Bergman | $845.00 | 0 | 0 | $930.00 | 15.6 | $14,508.00 | $14,508.00 |
| Sullivan | $550.00 | 0 | 0 | $595.00 | 9.8 | $5,831.00 | $5,831.00 |
| Ojionuka | $330.00 | 0 | 0 | N/A | 0 | 0 | 0 |
| Hodges | N/A | 0 | 0 | $420.00 | 0 | 0 | 0 |
| **Subtotal** | | 0 | 0 | | 26.2 | $21,431.00 | **$21,431.00** |
| **Motion to Compel and Motion Regarding RFA Answers** | | | | | | | |
| Herschlein | $1,300.00 | 1.5 | $1,950.00 | $1,365.00 | 0 | 0 | $1,690.00 |
| Bergman | $845.00 | 16.2 | $13,689.00 | $930.00 | 0 | 0 | $13,689.00 |
| Sullivan | $550.00 | 1.6 | $880.00 | $595.00 | 0 | 0 | $880.00 |
| Ojionuka | $330.00 | 0 | 0 | N/A | 0 | 0 | 0 |
| Hodges | N/A | 0 | 0 | $420.00 | 0 | 0 | 0 |
| **Subtotal** | | 18.6 | $16,519.00 | | 0 | 0 | **$16,519.00** |
| **Motion for Protective Order Regarding Morgan Stanley Subpoena** | | | | | | | |
| Herschlein | $1,300.00 | 5.6 | $7,280.00 | $1,365.00 | 0 | 0 | $7,280.00 |
| Bergman | $845.00 | 7.4 | $6,253.00 | $930.00 | 0 | 0 | $6,253.00 |
| Sullivan | $550.00 | 4.2 | $2,310.00 | $595.00 | 0 | 0 | $2,310.00 |
| Ojionuka | $330.00 | 0.6 | $198.00 | N/A | 0 | 0 | $98.00 |
| Hodges | N/A | | 0 | $420.00 | 0 | 0 | 0 |
| **Subtotal** | | 17.8 | $16,041.00 | | 0 | 0 | **$16,041.00** |
| **TOTAL:** | | 56.1 | $47,674.50 | | 35.9 | $29,955.50 | **$78,481.50** |

(Dkt. #101 at 9).[2]

The requested amount also includes $12,555.02 in expenses. The bulk of these expenses are Westlaw research charges. The expenses are broken down as follows between the various discovery motions:

---

[2] The Court notes a minor discrepancy concerning the total number of hours billed for 2021 as reflected in this chart and another chart, referenced in CHU de Quebec's motion as "Table 2." (Dkt. #101 at 8–9). While the charts indicate a total number of hours for 2021 as 56.1 and 56.3, respectively, by the Court's calculation the number should be 57.0 hours. (Dkt. #101 at 8–9).

| TABLE 4 | |
|---|---|
| **Motion** | **Costs** |
| Motion to Compel | $3,066.17 |
| Motion regarding RFA Answers | $2,950.65 |
| Motion to Compel and Motion regarding RFA Answers | $3,354.60 |
| Motion for Protective order regarding Morgan Stanley | $3,183.60 |
| **TOTAL** | **$12,555.02** |

(Dkt. #101 at 10).

CHU de Quebec's application for attorney's fees and expenses is fully briefed and ripe for the Court's decision.[3] (Dkt. #112, #119, #125).

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, parties may generally pursue discovery on any matter relevant to a claim or defense, so long as the material sought is not privileged or disproportionate to the needs of the case. FED. R. CIV. P. 26(b)(1).

Under Rule 37(a)(1), a party may move to compel discovery, and pursuant to Rule 37(a)(5), if a such a motion to compel is granted, the court must require the opposing party "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). However, such expenses

---

[3] Defendants filed a sur-reply brief opposing the attorney's fee application. (Dkt. #125). The sur-reply exceeded the Court's page limits and introduced new evidence: the Declaration of Gary B. Solomon. (Dkt. #125-1). In response to the sur-reply, CHU de Quebec moved for permission to file a supplemental brief calling attention to the sur-reply's deficiencies and opposing the declaration. (Dkt. #128). In turn, Defendant moved for leave to amend the sur-reply to conform to the Court's page limits. (Dkt. #136). The Court finds that neither party will be prejudiced by granting the other party's motion—and will therefore grant them both. *See Waterman v. McKinney Indep. Sch. Dist.*, No. 4:13-CV-170, 2014 WL 2611185, at *6 (E.D. Tex. June 11, 2014) (holding that supplementing the summary judgment record with certain deposition transcripts would not "prejudice or harm" the opposing party); *Fire King Int'l, LLC v. Tidel Eng'g, L.P.*, No. 3-07-CV-0655-G, 2009 WL 10704423, at *2 (N.D. Tex. Mar. 16, 2009) ("Although plaintiff has failed to articulate a good reason for allowing this new evidence at the reply stage, no injustice will result if the evidence is considered."), *adopted by* 613 F.Supp.2d 836 (N.D. Tex. 2009).

will not be awarded if: (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (2) "the opposing party's nondisclosure, response, or objection was substantially justified";[4] or (3) "other circumstances make an award of expenses unjust." *Id.* at (i)–(iii); *see also Nguyen v. La. State Bd. of Cosmetology*, No. 14-80-BAJ-RLB, 2016 WL 67253, at *3 (M.D. La. Jan. 5, 2016) ("Because the Court has granted Defendant's Motion to Compel and no exceptions apply, Defendant is entitled to an award of reasonable expenses, including attorney's fees.").

If the motion to compel is denied, however, the Court generally must require the moving party to pay the "reasonable expenses incurred" by the party opposing the motion. FED. R. CIV. P. 37(a)(5)(B). But the moving party need not pay expenses when the motion was "substantially justified" or awarding expenses would be "unjust."[5] *Id.*

## III. DISCUSSION

The Court finds that CHU de Quebec may recover reasonable attorney's fees and expenses incurred litigating the written discovery motions and the opposed protective order. But because CHU de Quebec's fee application includes work performed at an unreasonable hourly rate, work performed for an unreasonable

---

[4] That is, if there was a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action." *See Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (cleaned up).

[5] Additionally, the standards applicable to motions for expenses brought pursuant to Rule 37(a)(5) are explicitly incorporated in Rule 36(a)(6) (motions regarding the sufficiency of an answer or objection to requests for admissions) and Rule 26(c)(3) (motions for protective orders). Therefore, when considering CHU de Quebec's sufficiency motion and Defendants' motion for protective order, the Court will refer only to Rule 37's requirements.

number of hours, and unjustified expenses, the Court reduces the requested award from $91,036.52 to $37,036.67.

### A. CHU de Quebec May Recover Reasonable Attorney's Fees and Expenses.

As an initial matter, the Court finds that CHU de Quebec may recover reasonable attorney's fees and expenses incurred litigating the discovery motions in this action. That is true not only for the two motions arising from the written discovery requests, but also for its efforts litigating the opposed motion for protective order pertaining to the Morgan Stanley bank records.

### i.  Written Discovery Motions

CHU de Quebec prevailed on both of its discovery motions pertaining to its written discovery requests: (1) the motion to compel responses to the disputed interrogatories and requests for production, (Dkt. #54), and (2) the motion to determine the sufficiency of Defendants' answers and objections to requests for admission. (Dkt. #72).

As to the first motion, the Court found that all of Defendants' objections lacked merit. One objection unreasonably quibbled over the definition of "You," a clearly defined term in the written discovery instructions. *CHU de Quebec*, 2022 WL 1719405, at *3–4. Another objection sought to prevent disclosure of Defendant Fritz's tax returns, which under the circumstances of this case, were plainly relevant. *Id.* at *5–6. And for the bulk of the objections, Defendants provided only general or boilerplate grounds for opposing the requested discovery. *Id.* at *3–7. These objections fell short of the federal standard for opposing discovery requests—which requires the grounds for the objection to be stated with specificity—and constituted

8

a waiver. *Id.* The Court therefore ordered CHU de Quebec to file an application for expenses incurred litigating the disputed interrogatories and requests for production. *Id.* at *7.

The Court also ruled in CHU de Quebec's favor on the second motion pertaining to the written discovery requests. Although the Court did not order CHU de Quebec to file an application for expenses incurred litigating that motion, that does not prevent CHU de Quebec from doing so now. To the contrary, the Federal Rules of Civil Procedure authorize the prevailing party in a motion concerning the sufficiency of responses to requests for admission to recover attorney's fees as a matter of right. FED. R. CIV. P. 36(a)(6). And here, CHU de Quebec prevailed on its motion concerning the sufficiency of the requests for admission for largely the same reasons it prevailed on the motion to compel: namely, Defendants asserted frivolous objections to the definition of "You" and an additional boilerplate objection describing as "vague" and "overbroad" a discovery request that was neither. *CHU de Quebec*, 2022 WL 1719405, at *3–4.

Because CHU de Quebec prevailed on these written discovery motions, it must be awarded reasonable expenses under Rule 37(a) unless Defendants can establish that an exception applies. Defendants have failed to do so. Although Defendants advance two arguments for why their opposition to the discovery motions was "substantially justified," both lack merit:

*First*, contrary to Defendants' assertion, the fact that Defendants amended their discovery responses and produced supplemental documents in response to the

discovery motions does not reduce their liability for the costs incurred drafting those motions. To the contrary, Rule 37(a) authorizes the recovery of attorney's fees and expenses not only when a discovery motion is granted, but also when "the disclosure or requested discovery is provided after the motion was filed," obviating the need for Court intervention. FED. R. CIV. P. 37(a)(5)(A).

*Second*, although the Court's order granting CHU de Quebec's discovery motions explained certain ways that the Defendants' objections *could* have been qualified, altered, or expanded to satisfy the federal standards, *see e.g.*, *CHU de Quebec*, 2022 WL 1719405, at *4, that does not mean that the objections, as drafted and submitted, were justified. The Court's instructions were intended to call attention to the severe deficiencies in Defendants' objections and responses—not to suggest that those objections and responses were a close call.

### ii. Opposed Motion for Protective Order

CHU de Quebec also prevailed in its opposition to the motion for protective order concerning the Morgan Stanley bank records. Defendants sought the protective order four days after Morgan Stanley's production deadline had elapsed and after Morgan Stanley had already produced the disputed documents. CHU de Quebec was then required to respond to the motion, asserting not only that it lacked merit, but also that it was moot. Defendants never challenged the mootness argument nor the authorities CHU de Quebec cited in its support. *See* (Dkt. #36 at 5) (citing *Ocean Garden Prods., Inc. v. Blessings, Inc.*, No. 8:20-MC-00006-JVS-KESX, 2020 WL 1650033, at *1 (C.D. Cal. Apr. 3, 2020) (denying a motion to quash as moot when the subpoenaed records had already been produced); *Brown v. Sperber-Porter*, No. CV-

16-02801-PHX-SRB, 2017 WL 10409840, at *2 (D. Ariz. Nov. 6, 2017) (same)). Because Defendants did not uphold their burden of establishing good cause for a protective order—and by all appearances, capitulated to the Morgan Stanley production once a stipulated protective order had been entered—the Court found the motion for protective order was moot and denied it. (Dkt. #41 at 2).

That the Court denied the motion for protective order as moot, without reaching the merits, does not cut against an award for attorney's fees and expenses. *See Antonis v. Elecs. for Imaging, Inc.*, No. 07-CV-163JL, 2008 WL 169955, at *1 (D.N.H. Jan. 16, 2008) (holding that although a motion to compel was "moot with regard to the merits" because the disputed material had been provided, the motion was "not moot with regard to sanctions"); *see also Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 595 (S.D. Tex. 2011) (holding that a party could recover attorney's fees incurred litigating a motion to compel even when the substantive issues had been resolved through party agreement). To the contrary, the Court finds that by filing the motion for protective order on documents that had already been produced and then stipulating to the disclosure of the documents, Defendants caused needless discovery expenses for which CHU de Quebec may recover under Rule 37(a).

## B. CHU de Quebec's Requested Attorney's Fees Are Unreasonable.

CHU de Quebec seeks to recover $78,481.50 in attorney's fees incurred litigating the three discovery motions. The Court finds that the requested fees are unreasonable under the circumstances and instead awards CHU de Quebec $36,964.50.

In the Fifth Circuit, courts use a two-step method for determining proper attorney's fees. The first step is to multiply the hours that the attorney worked by the attorney's hourly rate, yielding an amount that is referred to as the "lodestar." *See Hobbs v. EVO Inc.*, 7 F.4th 241, 259 (5th Cir. 2021). In calculating the lodestar, the Court places the burden on the party seeking attorney's fees to prove the reasonableness of both the attorney's hours and the hourly rate. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011); *Swanston v. City of Plano*, No. 4:19-CV-412, 2022 WL 3567059, at *2 (E.D. Tex. Aug. 18, 2022).

After calculating the lodestar, the Court moves to the second step of the reasonable fee analysis: applying the twelve *Johnson* factors to determine whether the lodestar should be adjusted, either upward or downward, based on the facts and circumstances of the case. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Swanston*, 2022 WL 3567059, at *2. Because the lodestar is presumed reasonable, the *Johnson* factors require modification of that amount only in "exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

In calculating attorney's fees, the Court's goal "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011). "The Court is also an expert on the reasonableness of fees and may use its own experience in deciding a fee award." *Tech. Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F.Supp.3d 892, 904 (E.D. Tex. 2017) (citations omitted).

Here, the Court begins by addressing the reasonableness of the rates charged in connection with the discovery motions. The Court then evaluates the reasonableness of the hours worked before addressing whether the award requires an adjustment under the *Johnson* factors.

### i. Reasonableness of the Rates Charged

CHU de Quebec fails to establish the reasonableness of the rates charged in litigating the three discovery motions. The touchstone principle in evaluating the reasonableness of the rates charged is that the moving party must demonstrate—through "satisfactory evidence"—that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain*, 649 F.3d at 381 (cleaned up). The "relevant market for the purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."[6] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quotations omitted).

In the community where this Court sits, attorney rates vary considerably based on the work performed and the attorney's skill and reputation. The average hourly rate for attorneys across the Dallas-Fort Worth metroplex is $308.00, according to

---

[6] Courts have recognized an exception to this rule when "abundant and uncontradicted evidence proved the necessity of . . . turning to out-of-district counsel." *McClain*, 649 F.3d at 382 (evaluating attorney's fees under Section 1988). Neither party asserts that the exception applies here.

statistics from the State Bar of Texas.[7] STATE BAR OF TEXAS, 2019 INCOME AND HOURLY RATES 10 (2019), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=54237. And in cases involving commercial disputes and breach of contract claims, specifically, attorneys frequently charge, and are awarded, rates ranging from $275.00 to above $400.00 per hour. *See Copeland v. Alamo Billing Co.*, No. 4:20-CV-00393-SDJ-CAN, 2021 WL 7500786, at *9 (E.D. Tex. Dec. 17, 2021) (observing in a breach of contract case that "[f]ederal district courts in Texas have found hourly rates at or above $400.00 to be reasonable"), *adopted by* 2022 WL 782742 (E.D. Tex. Mar. 14, 2022); *Branch Banking & Tr. Co. v. Harcharan Singh Narang, M.D., P.A.*, No. 3:17-CV-17-K (BT), 2018 WL 10398477, at *3 (N.D. Tex. Aug. 20, 2018) (holding that $279 was a reasonable rate for a commercial litigation attorney); *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, No. 3:14-CV-1028-D, 2018 WL 3475464, at *2–3 (N.D. Tex. July 19, 2018) (holding that $423.00 was an acceptable average hourly rate in commercial litigation case litigated by Norton Rose Fulbright attorneys).

Federal courts in this community have awarded even higher amounts in complex commercial disputes litigated by a "select group of top attorneys." *SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2015 WL 179025, at *9 (N.D. Tex.

---

[7] In evaluating the reasonableness of an attorney's hourly rate, federal district courts frequently take judicial notice of State Bar of Texas billing statistics. *See Vaquero Permian Processing LLC v. MIECO LLC*, No. P:21-CV-00050-DC, 2022 WL 2763514, at *3 (W.D. Tex. May 26, 2022) (collecting cases).

Jan. 14, 2015); *see also Tech. Pharm. Servs., LLC*, 298 F.Supp.3d 892 at 906–07 (awarding attorney's fees at top of rate of $860.00 per hour in a case involving sophisticated counsel and both contract and intellectual property claims); *Cruson v. Jackson Nat'l Life Ins. Co.*, No. 4:16-CV-912-ALM, 2021 WL 3702483, at *3 (E.D. Tex. June 4, 2021) (awarding attorney's fees at rates of $823.94 and $951.22, respectively, for two McKool Smith attorneys in a complex commercial case); *Crane v. Rave Rest. Grp., Inc.*, No. 4:20-CV-13-ALM, 2022 WL 403291, at *5 (E.D. Tex. Feb. 9, 2022) (awarding attorney's fees at a top rate of $925.00 per hour for skilled counsel in a case involving breach of contract and fraud claims); *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (awarding attorney's fees at rates ranging "from $537.00 to $862.00 per hour" in an ERISA case).

Attorney's fees are trending upward as more national law firms establish prominent offices in Texas cities. *Aperia Sols., Inc. v. Evance, Inc.*, No. 3:18-CV-03276-X, 2021 WL 3710563, at *3 (N.D. Tex. Aug. 19, 2021) ("Attorney hourly rates are on the rise in major Texas legal markets, particularly in business and commercial practices."), *rev'd on other grounds*, No. 21-10683, 2022 WL 2116001 (5th Cir. June 13, 2022). Some Texas lawyers now charge rates above $1,000.00 an hour for complex and high stakes disputes with the top attorneys billing up to $1,400.00 an hour. *See* Mark Curriden, *Texas Legal Rates Soar As National Firms Rush In*, HOUS. CHRON. (Mar. 24, 2017, 11:23 PM), https://www.houstonchronicle.com/business/articl

e/Texas-legal-rates-soar-as-national-firms-rush-in-11025525.php (reporting in 2017 that "at least 100 business attorneys practicing in Houston, Dallas and Austin . . . bill[ed] their corporate clients between $1,000.00 and $1,400.00 an hour").[8]

Here, CHU de Quebec seeks to recover attorney's fees billed at the outer boundaries of these prevailing rates. For work performed by a partner with over thirty years of experience, it seeks to recover at rates of up to $1,365.00 per hour. And for work performed by associates, it seeks to recover at rates of up to $930.00 per hour:[9]

| TABLE 1 | | | |
|---------|---|---|---|
| **Name** | **Title/Seniority** | **2021 Hourly Rate (USD)** | **2022 Hourly Rate (USD)** |
| James Herschlein | Partner (30+ years) | $1,300.00 | $1,365.00 |
| Andrew Bergman | Senior Associate (6th year) | $845.00 | $930.00 |
| Tyler Sullivan | Junior Associate (1st year) | $550.00 | $595.00 |

(Dkt. #101 at 8).

CHU de Quebec's attorneys are certainly competent, experienced, and belong to a reputable national law firm: Arnold & Porter. They also achieved favorable

---

[8] *See also Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, No. 4:14-CV-00371, 2018 WL 1602460, at *7 (E.D. Tex. Apr. 3, 2018) (awarding attorney's fees at top rate of $1,100.00 per hour when the opposing party did not object to that rate); *Meet the Texas Lawyers Whose Rate Now Exceeds $1,000 an Hour*, DALL. MORNING NEWS (June 3, 2015, 8:58 PM), https://www.dallasnews.com/business/2015/06/04/meet-the-texas-lawyers-whose-rate-now-exceeds-1000-an-hour/ (reporting that as of 2015 more than 200 Texas business attorneys charged an hourly rate between $900.00 and $995.00, that at least seventy lawyers in Dallas and Houston charged hourly rates above $1,000.00, and two top attorneys—"Steve Susman in Houston and Bill Brewer in Dallas"—charged hourly rates of $1,400.00).

[9] CHU de Quebec also seeks to recover fees paid for legal assistants. As explained below, however, *see infra* Part III(B)(ii), these fees cannot be recovered here because the assistants performed only clerical or secretarial work.

results for their client on each of the discovery motions at issue here. But CHU de Quebec has not established that this experience and success justifies charging the very top market rates to litigate the claims presented in this action. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 557 & n.7, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) (holding that the district court inappropriately awarded attorney's fees at a top rate of $866.00 per hour when nothing in the record supported that rate for the relevant market: Atlanta); *SAP Am., Inc. v. Investpic, LLC*, No. 3:16-CV-02689-K, 2018 WL 6329690, at *5 (N.D. Tex. Dec. 4, 2018), *aff'd*, 779 F.App'x 744 (Fed. Cir. 2019) (refusing to award attorney's fees at a top rate of $1,175.00 per hour in intellectual property case when counsel failed to establish the reasonableness of those rates except through "self-interested" evidence).

CHU de Quebec has not identified any cases of similar importance or complexity awarding attorney's fees at the requested rates. Nor has it presented any evidence supporting those rates except for two conclusory declarations. One declaration—authored by a partner in Arnold & Porter's New York office who claims no familiarity with the relevant legal market—states simply that the rates matched what Arnold & Porter typically charges its clients. (Dkt. #101-4 ¶¶ 12–13). The declaration does not explain, however, how those rates are justified in *this* legal community for the work performed in *this* case. The second declaration, authored by an Arnold & Porter partner apparently based in Texas, makes similar conclusory statements. (Dkt. #101-5 ¶¶ 6–8). But those statements are undercut by the Texas partner's own assertion that, when she litigated a case in Dallas-Fort Worth, she

17

charged a top rate of approximately $1,055.00—substantially below the top rate charged here.[10] (Dkt. #101-5 ¶ 8).

Because CHU de Quebec has failed to establish the reasonableness of the rates requested, the Court declines to award attorney's fees based on those rates. Instead, the Court will award attorney's fees at rates it deems acceptable based on its own judgment and experience. *Tech. Pharm. Servs., LLC*, 298 F.Supp.3d 892 at 904. The Court acknowledges that this case involves a substantial amount in controversy—over $5 million—and presents more complex issues than those typically raised in breach of contract cases. For example, CHU de Quebec's recovery turns on agency and vicarious liability issues for which it was justified in hiring experienced attorneys to ensure that the issues were appropriately evaluated and presented to the Court. The case also implicates an important issue—an alleged fraud perpetrated against a university hospital network during a global pandemic—that likely carries more weight with CHU de Quebec than is reflected in the amount in controversy alone. The importance of the case, when combined with its demands—for instance, the efforts spent litigating the discovery motions, the motions to dismiss, and a robust summary judgment motion—all support awarding CHU de Quebec's attorney's fees based on reasonable hourly rates (though not the steep rates requested in the fee application).

Therefore, the Court will award attorney's fees based on the rates reflected in the following table:

---

[10] Admittedly, some of this discrepancy can be explained by differences in experience level. Whereas the first declaration was authored by a partner with over thirty-six years of experience, (Dkt. #101-4 ¶ 4), the second declaration was authored by a partner with twenty-five years of experience. (Dkt. #101-5 ¶ 4).

| Name | Seniority | Requested 2021 Hourly Rate | Requested 2022 Hourly Rate | Awarded Rate |
|------|-----------|---------------------------|---------------------------|--------------|
| James Herschlein | Partner (30+ years) | $1,300.00 | $1,365.00 | **$900.00** |
| Andrew Bergman | Senior Associate (6th Year) | $845.00 | $930.00 | **$650.00** |
| Tyler Sullivan | Junior Associate (1st Year) | $550.00 | $595.00 | **$350.00** |

### ii. Reasonableness of Hours Billed

CHU de Quebec also failed to establish the reasonableness of the total hours billed on the three discovery motions. To prove the reasonableness of an attorney's hours, the moving party must provide "contemporaneous billing records" or "other documents" from which the Court can determine "which hours are compensable" and which hours are not. *Vaughan v. Lewisville Indep. Sch. Dist.*, No. 4:19-CV-109-SDJ, 2021 WL 6125786, at *5 (E.D. Tex. Dec. 28, 2021), *vacated on other grounds*, 62 F.4th 199 (5th Cir. 2023). The attorney's billing records must provide enough detail that the Court can determine the subject matter of each task performed and "whether the time was reasonably expended." *Siragusa v. Arnold*, No. 3:12-CV-4497-M, 2015 WL 518270, at *7 (N.D. Tex. Feb. 9, 2015) (quotations omitted).

As applied here, these rules dictate that CHU de Quebec's requested attorney's fees award must be categorically reduced in two ways: first, to exclude hours billed by legal assistants for clerical or secretarial work; and second, to account for

19

pervasive block billing. The Court also finds that certain additional reductions are needed for each discovery motion.

   ***Legal Assistants.*** As an initial matter, CHU de Quebec cannot recover attorney's fees based on work performed by legal assistants for clerical or secretarial tasks, as opposed to legal tasks. *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001); *Tow v. Speer*, No. CV H-11-3700, 2015 WL 12765414, at *8 (S.D. Tex. Aug. 17, 2015). Here, CHU de Quebec's requested attorney's fee award includes 3.6 hours of filing, calendaring, scheduling, and other administrative tasks performed by legal assistants. The Court declines to include these hours in the requested fee award. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *8 (N.D. Tex. Feb. 11, 2011) (holding that hours spent preparing exhibits, scheduling, filing proofs of service, and organizing files could not be recovered as attorney's fees). Nor may the hours be awarded as litigation expenses—as opposed to attorney's fees—because clerical worked performed by assistants or paralegals is treated as "unrecoverable overhead." *Protradenet, LLC v. Predictive Profiles, Inc.*, No. 6:18-CV-38-ADA, 2022 WL 2078032, at *3 (W.D. Tex. June 9, 2022) (quoting *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982)); *Coleman v. Houston Indep. Sch. Dist.*, 202 F.3d 264, 1999 WL 1131554, at *9 (5th Cir. 1999).

   ***Block Billing.*** The Court will also reduce the requested fee award because CHU de Quebec's counsel used pervasive block billing: meaning, that they combined multiple tasks into the same time entries. Courts disfavor block billing because it obscures how attorneys spend their time. *Thomason v. Metro. Life Ins. Co.*, No. 3:14-

CV-86-K, 2018 WL 1174086, at *3 (N.D. Tex. Mar. 5, 2018). When a litigant seeks to recover attorney's fees for block-billed hours, the Court has discretion to reduce the hours included in the fee award by a reasonable percentage. *See Vaughan*, 2021 WL 6125786, at *5–6 (applying a blanket reduction to an attorneys' fee award to account for inadequately documented time entries).

Here, CHU de Quebec's counsel sought to cure the block billing by revising its time entries when it filed the application for attorney's fees. *See* (Dkt. #101-4 ¶ 8) ("The time increments were not provided to the client in the original invoices . . . but were added to the invoices for this application . . . ."). But these efforts to correct the billing deficiencies six months after the fact plainly do not satisfy the requirement that a fee application be supported by "contemporaneous" billing records. *Vaughan*, 2021 WL 6125786, at *5. The Court will therefore reduce the hours included in the requested fee award by twenty percent as to each billing attorney.

***Written Discovery Disputes.*** The Court also finds that certain additional reductions are required to the hours spent litigating the written discovery disputes. The Court acknowledges that, in addition to developing litigation strategy, researching the issues, conferring with opposing counsel, and participating in a Court teleconference, Plaintiff's counsel was required to draft a deficiency letter, two substantive motions, and two reply briefs. These efforts required considerable investment from counsel for which CHU de Quebec may recover under Rule 37(a).

Although Defendants balk at the total hours expended litigating the written discovery disputes—72.1—a close review of the billing records reveals that counsel

performed many of its tasks reasonably and efficiently. For instance, CHU de Quebec's three attorneys spent approximately: 11.5 hours drafting the motion to compel, 7.5 hours drafting the motion regarding the requests for admission, 7.5 hours drafting a deficiency letter to opposing counsel, and 2.4 hours drafting a discovery dispute report for the Court. When these hours are combined with necessary email communications, research, conferences with opposing counsel, a teleconference with the Court, and various other necessary tasks, it is unsurprising that the hours add up to a substantial number. That Defendants' counsel purportedly would have litigated these matters more conservatively or streamlined its briefing does not call into question the approach used by CHU de Quebec's counsel. To the contrary, "good attorneys [may] litigate in their own manner" and are not required "to practice in a certain way" to support a fee award. *Imperium IP Holdings (Cayman), Ltd.*, 2018 WL 1602460, at *5 (quotations omitted).

The Court finds that a reduction is needed, however, to account for vague, incomplete, or excessive entries in the billing records. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (per curiam) ("[A] district court may reduce the number of hours awarded if the documentation is vague or incomplete." (emphasis omitted)). For example, the records include entries for more than nine hours of email communications—more time than was spent drafting either the motion relating to the requests for admission or the deficiency letter. Some of these entries provide scant detail as to the nature of the email communications and others appear to be related to ministerial tasks, such as filing, as opposed to legal tasks. One

entry states in its entirety: "Follow-up regarding motion to compel." (Dkt. #101-2 at 15). Counsel also billed time finalizing, proofing, or cite checking certain documents and creating an exhibit, without establishing that these tasks constituted legal work for which CHU de Quebec may recover attorney's fees.

The Court will therefore reduce the total hours billed litigating the written discovery motions by fifteen percent as to each of the billing attorneys. *See Randolph v. Dimension Films*, 634 F.Supp.2d 779, 798 (S.D. Tex. 2009) ("In dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.").

***Protective Order.*** The Court also finds that a reduction is needed to the hours recorded litigating the opposed protective order. At 17.2 hours, CHU de Quebec's three attorneys litigated the opposed protective order efficiently—spending approximately 4.4 hours researching the issues and 8.2 hours drafting a response to the opposed protective order, and most of the remaining time performing necessary legal work. But counsel also recorded certain vague, incomplete, or excessive entries similar to those recorded for the written discovery motions. These entries describe tasks such as proofing, cite checking, and "follow[ing] up regarding opposition to motion for protective order," (Dkt. #101-2 at 9), without establishing that these tasks constituted necessary legal work for which CHU de Quebec may recover fees. The Court therefore reduces the requested 17.2 hours for time spent opposing the protective order by five percent as to each of the billing attorneys.

\*      \*      \*

In sum, the Court finds that the requested attorney's fee award should be reduced as follows. Instead of recovering top rates approaching the outer boundaries of what is recoverable in the prevailing market, the Court awards CHU de Quebec's attorney's fees at $900.00 for partner work, $650.00 for senior associate work, and $350.00 for junior associate work. The Court reduces the total hours billed (as to each billing attorney) by twenty percent to account for block billing. The Court also excludes all secretarial and clerical work performed by legal assistants and applies additional reductions to each discovery motion. As to the motions arising from the written discovery dispute, the Court reduces the hours billed by each attorney by a flat fifteen percent. And as to the efforts expended opposing the protective order, the Court reduces the hours billed by each attorney by a flat five percent. As reflected in the tables below, these reductions result in a $36,964.50 lodestar:

| Written Discovery Motions | | | | | | |
|---|---|---|---|---|---|---|
| Name | Seniority | Requested Hours | Block Billing Reduction + Other Reductions | Awarded Hours | Awarded Rate | Total |
| James Herschlein | Partner (30+ years) | 4.3 | 35% | 2.8 | **$900.00** | $2,520.00 |
| Andrew Bergman | Senior Associate (6th Year) | 54 | 35% | 35.1 | **$650.00** | $22,815.00 |
| Tyler Sullivan | Junior Associate (1st Year) | 13.8 | 35% | 8.97 | **$350.00** | $3,139.50 |

| Opposed Protective Order | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **Seniority** | **Requested Hours** | **Block Billing Reduction + Other Reductions** | **Awarded Hours** | **Awarded Rate** | **Total** |
| James Herschlein | Partner (30+ years) | 5.6 | 25% | 4.2 | **$900.00** | $3,780.00 |
| Andrew Bergman | Senior Associate (6th Year) | 7.4 | 25% | 5.55 | **$650.00** | $3,607.50 |
| Tyler Sullivan | Junior Associate (1st Year) | 4.2 | 25% | 3.15 | **$350.00** | $1,102.50 |
| | | | | | | **$36,964.50** |

### iii. The *Johnson* Factors

The *Johnson* factors do not require any adjustment to the lodestar amount.
The twelve Johnson factors are: (1) time and labor required; (2) novelty and difficulty
of issues; (3) skill required; (4) loss of other employment in taking the case;
(5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
imposed by client or circumstances; (8) amount involved and results obtained;
(9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature
and length of relationship with the client; and (12) awards in similar cases. *Johnson*,
488 F.2d at 717–19.

In evaluating the lodestar, the Court already considered factors (1), (2), (3), (5),
(8), and (9). The remaining factors have no bearing on the attorney's fee award. The
Court therefore awards $36,964.50 in attorney's fees.

### C. CHU de Quebec's Requested Litigation Expenses Are Unreasonable.

CHU de Quebec seeks to recover not only attorney's fees, but also reasonable litigation expenses. Although CHU de Quebec may recover some of these expenses, it may not recover the bulk of them. The Court begins by addressing the online research charges before turning to the expenses incurred for copying, printing, and shipping.

#### i. Online Research Charges

CHU de Quebec has failed to establish that its requested Westlaw charges are reasonable. Some courts have awarded online research charges either as litigation costs or as an element of attorney's fees when the charges were reasonable and appropriately documented.[11] Generally, the moving party must demonstrate that the research charges were billed to the client according to prevailing standards in the community and that the fee award will not reimburse counsel for firm overhead. *See Hernandez v. Bridgestone Americas Tire Operations, LLC*, 831 F.3d 940, 950 (8th Cir. 2016) ("If the prevailing party demonstrates that separately billing for [computer research] is the 'prevailing practice in a given community' and that such fees are

---

[11] *Compare Thomason v. Metro. Life Ins. Co.*, No. 3:14-CV-86-K, 2018 WL 1174086, at *5 (N.D. Tex. Mar. 5, 2018) (awarding unopposed computer research charges as attorney's fees); *HCC Aviation Ins. Grp., Inc. v. Emps. Reinsurance Corp.*, No. 3:05-CV-744BH, 2008 WL 850419, at *11 (N.D. Tex. Mar. 21, 2008) (same); *Camargo v. Trammell Crow Interest Co.*, 318 F.Supp.2d 448, 451 (E.D. Tex. 2004) (awarding computer research charges), *with Denton v. City of El Paso*, No. EP-20-CV-85-KC, 2022 WL 2712859, at *9 (W.D. Tex. July 13, 2022) (awarding Westlaw research charges as an expense).

For the purposes of this Memorandum Opinion and Order, the Court need not delve into whether online research charges are appropriately categorized as costs or attorney's fees. The Court notes, however, that the line of authorities in this circuit categorizing online research as attorney's fees goes back to the early 2000s, *e.g.*, *Camargo*, 318 F.Supp.2d at 451, when research programs often used different fee structures from those used commonly today. For example, some programs charged the firm based on time spent on the program as opposed to the flat subscription fee discussed herein.

reasonable, the district court may award those costs." (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989))); *In re Trevino*, No. 10-70594, 2023 WL 1879050, at *26 (Bankr. S.D. Tex. Feb. 9, 2023) (refusing to award online research charges when those charges constituted overhead).

Here, CHU de Quebec seeks to recover $12,482.85 in online research expenses—representing almost fourteen percent of the requested fee award—without providing any explanation as to the topics researched or why that research was necessary. Nor does the fee application establish by what method Westlaw charged counsel for the research, making it impossible to determine whether the requested charges are truly expenses, on the one hand, or overhead, on the other.

The Court is aware that many firms access Westlaw and other legal research databases by paying flat subscription fees. The firms often recoup these flat subscription fees by charging clients fixed amounts for running searches or accessing particular authorities or documents. That arrangement may be fine between consenting parties in the marketplace. But as to attorney's fee awards under the Federal Rules of Civil Procedure, this Court concludes that a blanket subscription to a virtual law library constitutes an overhead expense just like the expense of acquiring a real law library or like the expenses of water, electricity, staplers, and tables. *See Smith v. Serv. Master Corp.*, 592 F.App'x 363, 368 (6th Cir. 2014) ("If the lawyer or firm pays a blanket access fee, rather than per search, there is no reason to distinguish the on-line research cost from the cost of the books that at one time

lined the walls of legal offices, which was treated as overhead.").[12] These subscription expenses are therefore appropriately accounted for in the attorney's hourly billing rate and should not be considered separately as chargeable for the purposes of determining an attorney's fee award.

### ii. Copying, Printing, and Shipping

Besides the online research charges, CHU de Quebec also requests $72.17 in litigation expenses for "copying, printing, and shipping." (Dkt. #101-4   ¶ 16). Defendants do not object to awarding these expenses. (Dkt. #112 at 20) ("[I]n my professional experience and opinion, no more than $72.17 of the requested expenses should be allowed as reasonabl[e] and necessary to the discovery dispute . . . ."). The Court therefore grants the requested award for copying, printing, and shipping expenses as reasonable litigation costs necessarily incurred in litigating the discovery disputes. *See Williams v. Best Temp. Servs., LLC*, No. 3:14-CV-484-D, 2015 WL 12763509, at *5 (N.D. Tex. Aug. 18, 2015) (awarding postage and copying costs as reasonable expenses under Rule 37(a)).

### IV. CONCLUSION

CHU de Quebec may recover only the reasonable attorney's fees and other expenses incurred litigating the discovery disputes in this action. The Court therefore grants the fee application but only in part.

Therefore, it is **ORDERED** as follows:

---

[12] *See also In re Trevino*, 2023 WL 1879050, at *26 ("While it may be appropriate to independently bill clients for necessary research that is outside of the firm's general subscription to Westlaw, the general subscription is a clear example of an overhead expense.").

Plaintiff CHU de Quebec–Universite Laval's Application for an Award of Expenses, (Dkt. #101), is **GRANTED in part**. By April 21, 2023, Defendants Dreamscape Development Group Holdings, Inc., and Darrel Fritz shall pay Plaintiff CHU de Quebec $37,036.67 for attorney's fees and other expenses incurred litigation the discovery disputes in this case.

Plaintiff CHU de Quebec–Universite Laval's Motion for Leave to Submit a Supplemental Brief Regarding Its Application for an Award of Expenses, (Dkt. #128), is **GRANTED**.

Defendants' Motion to Substitute Defendants' Amended Sur-Reply in Opposition to Plaintiff's Application for an Award of Expenses and Strike Defendant's Sur-Reply in Opposition to Plaintiff's Application for an Award of Expenses, (Dkt. #136), is **GRANTED**.

**So ORDERED and SIGNED this 31st day of March, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

29